### WARD v. DEAVERS et al.

### YOUNG et al. v. WARD.

### Nos. 11070, 11312.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 22, 1952.

Decided March 26, 1953.

Mr. Emory H. Guy, Washington, D. C., for appellant Ellen M. Ward in case No. 11070 and for appellee Ellen M. Ward in case No. 11312.

Mr. Byron N. Scott, Washington, D. C., for appellees C. J. Young and Lane Pastor in case No. 11070 and for appellants C. J. Young and Lane Pastor in case No. 11312.

Mr. Dickson R. Loos, Washington, D. C., with whom Mr. Alexander M. Heron, Washington, D. C., was on the brief, for

appellee The Aetna Casualty & Surety Company in case No. 11070.

Mr. Jo V. Morgan, Jr., Washington, D. C., with whom Messrs. John J. Wilson and Harry L. Ryan, Jr., Washington, D. C., were on the brief, for appellee Maryland Casualty Company in case No. 11070.

Before EDGERTON, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

These appeals grow out of a suit brought by Mrs. Ellen Ward, to rescind certain transactions whereby she acquired a rooming-house business.

One Deavers was the principal owner of the business in question, which was conducted in leased premises. Under the lease, Deavers could be required to quit the premises within 60 days, if the owner should at any time sell the property. In April 1945, Deavers contracted to sell the business to defendant Belew. Belew took over the business and served as its manager under a "Manager's Operating Agreement" with Deavers. He did not acquire title to the business, but by February 1946 he had a $3,400 equity in it.

In October 1945 the business was offered for sale for $11,000 through defendants-appellants Young and Pastor, partners in a business-chance brokerage firm licensed in the District of Columbia. Plaintiff Ward, who had previously bought a similar—and entirely satisfactory—business through these brokers, investigated the proposal with the aid of one of their employees. Shortly thereafter she put up $1,000, and offered to buy the business. Belew accepted the offer as "owner." The sale hung in suspense, for various reasons, until mid-February of 1946, when Pastor, with whom plaintiff had been dealing for the most part, renewed his efforts to complete it. On February 14, Mrs. Ward raised her deposit to $2,500 and signed a new sales contract with Belew as owner.

The next day she signed a "Manager's Operating Agreement" offered by Deavers and similar to that he had given Belew, in lieu of a bill of sale. By its terms she was to pay Deavers part of the purchase price in installments during the remaining 13½ months of the lease on the premises, thereby acquiring the right to purchase the assets and good will of the business at the expiration of the lease for a nominal sum. At the same time, plaintiff gave Deavers a note for $4,000, covering the installments and final payment due him, and another note for $3,400 which he immediately indorsed to Belew "without recourse," evidently to cover Belew's equity in the business. She also executed a note for the balance of the purchase price—$1,100—to Young and Pastor, covering their commission on the transaction.[1] Plaintiff entered into possession immediately. Within three months the premises were sold and within seven months the new owner demanded possession. Approximately ten months after she bought the business, plaintiff surrendered the premises in which it was conducted.

After the new owner's demand for possession, plaintiff brought this action in the United States District Court for the District of Columbia. Her complaint was entitled "Complaint for Rescission of Business Sales Contract; the Cancellation of a Certain Manager's Operating Contract, and of Certain Promissory Notes Representing Part of Consideration of said Business Sales Contract." The prayer for relief asked that these contracts and notes be surrendered to the court "by [for?] cancellation," that plaintiff's total cash investment in the business be returned, that the court "ascertain the expenses and damages suffered by plaintiff" and enter judgment therefor, and that further just and proper relief be granted. Plaintiff named as defendants, and served, Pastor and his statutory surety, Young and his statutory surety, and Belew.[2] Other named defend-

1. The $3,400 note indorsed to Belew and the $1,100 note to Young and Pastor were at first issued in the form of a $4,500 note payable directly to Belew. The lat-

ter note was destroyed when the two replacements for it were executed.

2. Young's surety as a licensed broker was Maryland Casualty Company; Pastor's

ants, among them Deavers, were never validly served with process, and the action proceeded without them. The court, after trial without a jury, entered a Memorandum Opinion [3] in which it made findings of fraud, concealment and damage, and concluded "as a matter of law, that the plaintiff is entitled to rescind and she is to have judgment to that effect." Then, seeking to restore the *status quo ante,* it entered money judgments against Pastor, Young and Belew, and decreed that "all notes * * * executed by plaintiff and arising out of this transaction, are herewith cancelled." Neither contract was specifically rescinded in the judgment. Plaintiff, dissatisfied with the sums awarded and the court's dismissal of the action "without prejudice" as to the two defendant sureties, appealed. Defendants Young and Pastor, dissatisfied with any finding for the plaintiff, filed a counter-appeal.

In their counter-appeal, the brokers contend that Deavers was an indispensable party and that by reason of his absence the trial court "was without jurisdiction to hear the case." The issue thus presented requires resolution at the outset. It is settled that "Rescission of a contract, or declaration of its invalidity, as to some of the parties, but not as to others, is not generally permitted." Roos v. Texas Co., 2 Cir., 1927, 23 F.2d 171, 172. In this case there were two writings—the sales contract of February 14 signed by the parties Ward and Belew, and the Manager's Agreement of February 15 signed by Mrs. Ward and by Deavers, who was not a party to this suit. It seems reasonably clear that the sales contract of February 14 became a nullity on February 15 by merger in the Manager's Agreement. But even if it did not, we think it was not severable from the rest of the transaction for separate rescission,

though the formal parties to it were before the court. Nor could the remainder of the transaction—the Manager's Agreement, signed by Deavers—be rescinded in the absence of Deavers. "[T]here is a general rule that where rights sued upon arise from a contract all parties to it must be joined." Gauss v. Kirk, 1952, 91 U.S.App.D.C. 80, 198 F.2d 83, 84. Under the agreement, Deavers was entitled, *inter alia,* to prompt monthly payment of $250 for 13½ months, or, failing this, restoration of the premises "with all of the equipment, furnishings, stock in trade, or other chattels therein contained * * *," unencumbered and in good condition. He was an indispensable party because a final decree rescinding the agreement could hardly be made without "affecting" his interest, Shields v. Barrow, 1854, 17 How. 130, 136, 15 L.Ed. 158. Because the transaction could not be rescinded as to Deavers, it could not be rescinded at all. Roos v. Texas Co., supra.

Although the District Court lacked jurisdiction to rescind, it did not therefore lack jurisdiction "to hear the case," as Young and Pastor contend. Since the complaint alleged that "the entire transaction was fraudulent," and that others beside Deavers were implicated, the court should have considered whether relief other than rescission should not be granted, despite Deavers' absence, against parties actually before the court. Rule 54(c) of the Federal Rules of Civil Procedure, 28 U.S. C.A., requires that the court's final judgment "grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Such a situation may present an occasion for application of Rule 19(b) of the Federal Rules of Civil Procedure.[4] See Gauss v. Kirk, supra, 91 U.S.

---

was Aetna Casualty & Surety Company. Their bonds were written pursuant to Section 45–1405 of the D.C.Code (1951).

3. Later designated in its judgment to serve as its Findings of Fact and Conclusions of Law.

4. That rule provides: "When persons who are not indispensable, but who ought to be parties if complete relief is to be ac-

corded between those already parties, have not been made parties and are subject to the jurisdiction of the court as to both service of process and venue and can be made parties without depriving the court of jurisdiction of the parties before it, the court shall order them summoned to appear in the action. The court in its discretion may proceed in the action without making such persons

App.D.C. 80, 198 F.2d at page 86. On the other hand, if the court finds that plaintiff was entitled to tort damages against persons actually served Deavers' presence before the court is neither indispensable nor necessary.[5]

We turn now to the merits of the case. The trial court's ultimate finding that fraud was committed by the brokers and by Belew appears to be based on its findings (1) that "all of the defendants concealed from the plaintiff the fact that Belew was not the owner of the property in question," and (2) that there were "outstanding two other sales agreements of the same property." (Memorandum Opinion.)

■ We find no adequate support in the record for the first of these basic findings. Plaintiff knew that both Deavers and Belew were interested in the business (Complaint, par. 7; Tr. 72, 75). She knew that neither one was owner of the real estate itself (Complaint, par. 7). She dealt with both men, and clearly knew she was buying up their respective interests in the business.[6] We find no evidence of misrepresentation as to Belew's interest,[7] much less any misrepresentation in that regard on which plaintiff relied and acted with consequent injury. Cf. Imperial Assurance Co. of N. Y. v. Joseph Supornick & Son, 8 Cir., 1950, 184 F.2d 930, 934.

■ Again, we think the "two other sales agreements of the same property" afford no basis for the relief attempted. The court no doubt refers to the 1945 agreement between Deavers and Belew and to a contract made in 1946 between Deavers and a Mrs. Restine. The first of these was super-seded by the plaintiff's purchase of the business. Belew joined in the transfer to her, and effectively parted with his interest. As to the contract between Deavers and Mrs. Restine entered into in January 1946: there is nothing to indicate that it was ever made the basis of any claim against Mrs. Ward or anyone else, or that any injury was caused plaintiff by it, or that any misrepresentation in connection with it was ever made to her.[8]

If the trial court's general finding of fraud is to be sustained, it must be on other grounds, not specified by the court. We have reviewed the entire transcript of testimony, but find nothing in it which so decisively points to fraud as to dispense with the need for specific findings. We have considered whether to reverse outright, under the doctrine that fraud must be clearly and convincingly shown. Public Motor Service v. Standard Oil Company of New Jersey, 1938, 69 App.D.C. 89, 91, 99 F.2d 124, 126. But we recognize that the evidence here on many points is conflicting, and that the trial court, which heard the witnesses, is in a much better position than we to reach a conclusion on the question of fraud. Cf. Wynne v. Boone, 1951, 88 U.S. App.D.C. 363, 191 F.2d 220. Accordingly, we think the case should be remanded. Plaintiff must, of course, show fraud committed by or imputable to the defendants who are actually before the court, in order to justify relief as against them. And she must show that the fraud caused the injury of which she complains: damages therefor must be measured by the usual tests of causality rather than by an effort to restore

---

parties, if its jurisdiction over them as to either service of process or venue can be acquired only by their consent or voluntary appearance or if, though they are subject to its jurisdiction, their joinder would deprive the court of jurisdiction of the parties before it; but the judgment rendered therein does not affect the rights or liabilities of absent persons."

5. "Tort feasors are not indispensable or necessary to an action against one of their number, because their liability is both joint and several." 3 Moore's Federal Practice, par. 19.07; Wells v. Uni-versal Pictures Co., 2 Cir., 1948, 166 F.2d 690; Carl Gutmann & Co. v. Rohrer Knitting Mills, D.C., 1949, 86 F.Supp. 506, Id., 9 F.R.D. 67.

6. See supra note 1.

7. Certainly, under the circumstances, there was no fraud in Belew's signing as "owner," when Deavers also became obligated.

8. The contract was apparently abandoned when Mrs. Restine committed suicide a few days after signing it, and before Mrs. Ward's second offer on the business.

the *status quo ante*.[9] Cf. Draisner v. Lowenstein, 1952, 91 U.S.App.D.C. 98, 198 F. 2d 295. Here, again, new findings are called for. Upon remand, the court should also reexamine its dismissal of the action, without prejudice, as to the statutory sureties of Young and Pastor.[10] Absent good reason for declining to decide it, we think the issue of the sureties' liability should be settled finally in the present action. No such reason appears in the record before us.

For the foregoing reasons, the judgment will be

Reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

9. If, upon the remand, the court proceeds to an award of damages against any defendant properly served who remains in possession of notes arising from this transaction, cancellation thereof by physical destruction as an offset to the award may then be within the range of proper relief. See Annotation, 109 A.L.R. 1032.

10. See supra note 2.