221 F.2d 464
 MASTERCRAFTERS CLOCK & RADIO CO., Plaintiff-Appellant,
v.
VACHERON & CONSTANTIN-LE COULTRE WATCHES, Inc., Defendant-Counterclaimant-Appellant, and
Jaeger-Le Coultre, S. A., Intervenor-Counterclaimant-Appellant.
 No. 194.
 Docket 23157.
 United States Court of Appeals, Second Circuit.
 Argued February 17, 18, 1955.
 Decided March 31, 1955.
 As Modified on Denial of Rehearing June 10, 1955.
 
 Clarence E. Threedy and Edward C. Threedy, Chicago, Ill. (Harry Meisnere, New York City, of counsel), for plaintiff-appellant.
 Goodwin, Danforth, Savage & Whitehead, New York City (William F. Clare, Jr., New York City, of counsel), and Pennie, Edmonds, Morton, Barrows & Taylor, New York City (W. Brown Morton, Jr., New York City, and Stanton T. Lawrence, Jr., Rutherford, N. J.) for defendant and intervenor-counterclaimant.
 Before FRANK and MEDINA, Circuit Judges, and BRENNAN, District Judge.
 FRANK, Circuit Judge.
 
 
 1
 Mastercrafters Clock & Radio Co., the plaintiff below, is an American manufacturer of electric clocks. Vacheron & Constantin-Le Coultre Watches, Inc. (hereinafter referred to as "Vacheron"), defendant-counterclaimant, is an American importer and distributor of Swiss watches. Jaeger-Le Coultre, S. A., intervenor-counterclaimant, is a Swiss corporation engaged in selling Swiss-manufactured watches.
 
 
 2
 In 1952, when Mastercrafters launched the production and distribution of its Model 308 clock, Vacheron wired Mastercrafters and many of its customers-distributors that Model 308 was a counterfeit of the distinctive appearance and configuration of the Atmos clock, distributed by Vacheron, and that Vacheron would commence legal action if necessary. Following these telegrams, Vacheron started state-court suits against several of Mastercrafters' distributors for damages and an injunction. Mastercrafters, faced with a cancellation of orders for its Model 308 from distributors being sued in the state courts, countered by bringing the present action seeking a declaratory judgment that its Model 308 does not unfairly compete with Vacheron, and asking damages allegedly resulting from Vacheron's suits against Mastercrafters' distributors and an injunction to restrain further prosecution of those suits. Vacheron counterclaimed for damages from alleged unfair competition and for an injunction restraining the manufacture and distribution of Model 308. Jaeger-Le Coultre was permitted to intervene and join in Vacheron's counterclaim. The facts are more fully stated in the opinion of the trial judge, reported in 119 F.Supp. 209. Pursuant to that opinion, he entered an order in favor of plaintiff and dismissing the counterclaims. From this order, defendant and the intervenor have appealed. After a further hearing as to the amount of plaintiff's damage, he subsequently entered a judgment granting plaintiff damages in the amount of $4,844. From this judgment plaintiff has appealed, complaining of the insufficiency of the amount of damages awarded.
 
 
 3
 The judge found that, before plaintiff began production of its Model 308, the Atmos clock "was readily distinguishable from all other clocks then on the market by virtue of its appearance"; that plaintiff's Model 308 copied that appearance; that plaintiff "undoubtedly intended to, and did, avail itself of an eye-catching design and hoped to cater to the price-conscious purchaser who desires to own a copy of a luxury design clock regardless of mechanism or source"; that the Atmos clock sold for not less than $175. while plaintiff's sold for $30. or $40; that on "two or three occasions Model 308 has been described as `a copy of Atmos,'" once by a representative of plaintiff at an exhibit in Chicago, on the other occasions by distributors of plaintiff's clock; that "since the introduction of the Model 308, Vacheron's salesmen have encountered considerable sales resistance" and its sales have "fallen off"; and that these facts undoubtedly prove "the uniqueness and even the aesthetic qualities of" the Atmos clock. He further found that three customers inquired as to "the lower priced Atmos" and that others "said they knew where they `could get a clock for $30 or $40 just like the Atmos.'" But he held there was no unfair competition by plaintiff because (a) more than one person lawfully distributed the Atmos clock and therefore there was no single source, (b) there was no evidence to show that the public cared what was the ultimate source, and (c) plaintiff's clock was plainly marked and advertised as plaintiff's.
 
 
 4
 Absent a design patent or a secondary meaning, of course there would be no actionable harm by plaintiff.[1] But the existence of a secondary meaning, attaching to the unique appearance of the Atmos clock, is not precluded by the mere fact that more than one person distributed that clock in the same area. The actionable harm, in a secondary-meaning case, may result either from the likelihood (a) of loss of customers or (b) of loss of reputation, or (c) of both. Such loss can result from the customer's belief that the competing article derives from the same source as that of the party complaining; and it matters not whether the customers know just who is the source.[2] The ultimate source here was the Swiss manufacturer, while the intermediate sources, in this country, were the defendant and Cartier. All three had actionable claims against plaintiff, if its conduct did or was likely to injure the reputation of the ultimate source of the Atmos clock, for all three legitimately enjoyed the benefits of that reputation.
 
 
 5
 True, a customer examining plaintiff's clock would see from the electric cord, that it was not an "atmospheric" clock. But, as the judge found, plaintiff copied the design of the Atmos clock because plaintiff intended to, and did, attract purchasers who wanted a "luxury design" clock. This goes to show at least that some customers would buy plaintiff's cheaper clock for the purpose of acquiring the prestige gained by displaying what many visitors at the customers' homes would regard as a prestigious article. Plaintiff's wrong thus consisted of the fact that such a visitor would be likely to assume that the clock was an Atmos clock. Neither the electric cord attached to, nor the plaintiff's name on, its clock would be likely to come to the attention of such a visitor; the likelihood of such confusion suffices to render plaintiff's conduct actionable.[3]
 
 
 6
 Plaintiff's intention thus to reap financial benefits from poaching on the reputation of the Atmos clock is of major importance. Of course, where there is no likelihood of confusion — as, e. g., where the alleged infringing article is not in a sufficiently adjacent field[4] — then an alleged infringer's intent becomes irrelevant, since an intent to do a wrong cannot transmute a lawful into an unlawful act.[5] But where the copying is unlawful, if only there is a likelihood of confusion, then the intent of the copier becomes decidedly relevant:[6] It gives rise to a powerful inference that confusion is likely, and puts on the alleged infringer the burden of going forward with proof that it is not. Here the plaintiff's intent is unmistakable; accordingly, plaintiff had the burden of going forward with proof showing an absence of such likelihood; and that burden plaintiff did not discharge. Consequently, we do not accept the judge's findings as to the absence of unfair competition by plaintiff.[7]
 
 
 7
 It would seem that the Swiss manufacturer was not an indispensable party;[8] but, even if it was, plaintiff waived its absence as a party by not asserting that fact as a defense.[9] We reject plaintiff's argument that it will be unfair to plaintiff to hold it liable here, because it may be subjected to a subsequent suit by Cartier: Defendant and the intervenor are entitled to an injunction, and also to the damages they have suffered; we need not now decide whether Cartier can also later collect damages for the harm done to it.
 
 
 8
 Since plaintiff was guilty of unfair competition, the judgment against defendant must be reversed. We remand with directions to dismiss plaintiff's complaint and, on the counterclaim, to grant an injunction against plaintiff, and to ascertain the damages to defendant and the intervenor.
 
 
 9
 The trial judge should determine whether defendant should also be awarded a sum equal to plaintiff's profits from sales of the infringing clock. We do not now decide that such an amount should be awarded but leave that matter to be decided, in the first instance at any rate, by the trial judge.
 
 
 10
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 Chas. D. Briddell, Inc., v. Alglobe Trading Corp., 2 Cir., 194 F.2d 416, 418
 
 
 [2]
 Coca Cola Company v. Koke Co. of America, 254 U.S. 143, 146, 41 S.Ct. 113, 65 L.Ed. 189
 
 
 [3]
 The writer of this opinion happens to believe that the "secondary meaning" and other trade-name doctrines should be modified in several respects. See, e. g., concurring opinion in Standard Brands, Inc., v. Smidler, 2 Cir., 151 F.2d 34, 37; dissenting opinion in General Time Instrument Corp. v. U. S. Time Corp., 2 Cir., 165 F.2d 853, 855; dissenting opinion in Triangle Publications v. Rohrlich, 2 Cir., 167 F.2d 969, 974, at pages 980-981. But his views will have no significance unless and until the Supreme Court accepts them
 
 
 [4]
 "For the common law favors competition; and it is of the essence of competition that competitors copy and undersell the product of an originator. The competitors do not lose their favored, common-law position merely because someone chooses to call them `free riders.' To have protection from such competition, the originator must possess some sort of monopoly." Charles D. Briddell, Inc., v. Alglobe Trading Corp., 2 Cir., 194 F.2d 416, 418. Cf. Hyde Park Clothes v. Hyde Park Fashions, 2 Cir., 204 F.2d 223
 
 
 [5]
 See, e. g., Kann v. Diamond Steel Co., 8 Cir., 89 F. 706, 712; "The intention to injure another, if no injury is done, and none ever will be done, constitutes no ground for relief." Cf. Holmes, J., dissenting in Continental Wall Paper Co. v. Louis Vcight & Sons Co., 212 U.S. 227, 271, 29 S.Ct. 280, 296, 53 L.Ed. 486: "A man does not make conduct otherwise lawful unlawful simply by yearning that it should be so."
 
 
 [6]
 Restatement of Torts, § 729(f); American Chicle Co. v. Topps Chewing Gum, 2 Cir., 208 F.2d 560; Miles Shoes, Inc., v. R. H. Macy & Co., 2 Cir., 199 F.2d 602
 
 
 [7]
 Especially since his findings stemmed from his failure to apply the correct proofburden rule and from his erroneous legal conclusion that the distribution of the Atmos clock by several persons prevented the existence of a secondary meaning. See 5 Moore, Federal Practice (2d ed.) p. 2631; Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217; cf. United States v. United States Gypsum Co., 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746
 
 
 [8]
 G. H. Mumm Chapagne v. Eastern Wine Corp., 2 Cir., 142 F.2d 499, 502; Capital Records v. Mercury Records Corp., D.C., 109 F.Supp. 330, 334-335
 
 
 [9]
 Fed.Rules Civ.Proc. rule 12(h), 28 U.S. C.A