**TRAVELERS INDEMNITY COMPANY**

v.

**HOUSEHOLD INTERNATIONAL, INC. and National Car Rental Systems, Inc.**

**Civ. No. H–89–464 (AHN).**

United States District Court, D. Connecticut.

Oct. 17, 1991.

Thomas J. Groark, Day, Berry & Howard, Hartford, Conn., for Travelers Indem. Co.

Peter J. Frazza, Budd, Larner, Gross, Picillo, Rosenbaum, Greenberg & Sade, Short Hills, N.J., for Household Intern., Inc.

William F. Dolan, Chicago, Ill., for National Car Rental Systems, Inc.

RULING ON HOUSEHOLD'S MOTION TO DISMISS, MOTION FOR LEAVE TO FILE AMENDED PLEADINGS, AND TRAVELERS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

NEVAS, District Judge.

This is a breach of contract action in which Travelers Indemnity Company

("Travelers") sues Household International, Inc. ("Household") and National Car Rental Systems, Inc. ("National") for the recovery of the $2,000,000 Travelers paid out as the insurer of a catastrophic liability policy. On May 11, 1990, the court granted Travelers' motion for summary judgment. On November 8, 1990, a day before the court was to hear oral argument on Travelers' motion for interest, Household moved to dismiss the action. Household bases its motion to dismiss on what can only be termed an eleventh-hour revelation: the court lacks subject matter jurisdiction because the insurance policy at the center of this action was issued by an Illinois corporation—the Travelers Indemnity Company of Illinois ("Travelers Illinois")—and thus diversity does not exist. Both parties have also filed motions for leave to file amended pleadings. For the reasons that follow, the court grants Travelers' motion for leave to file an amended complaint, denies Household's motion for leave to file amended pleadings, and grants Household's motion to dismiss.

### Background

The background to this motion is lengthy. Household, a Delaware corporation headquartered in Illinois, is a diversified holding company with a variety of subsidiaries. In 1985 National was one of those subsidiaries. In 1986, Household sold National, which now operates as an independent entity. Sometime in late 1984 a Travelers entity issued a catastrophic umbrella policy ("the Policy") to Household.[1] By its terms, the Policy covered the calendar year 1985. When first issued, the Policy provided $5,000,000 of coverage in excess of Household's $1,000,000 in primary coverage. Travelers also wrote the primary coverage policy. Effective March 1, 1985, the parties amended the policy to reduce its liability limit to $4,000,000 and to provide for a $1,000,000 per occurrence deductible. The amended policy provided that Travelers had the option of paying this deductible to a claimant and then seeking reimbursement:

> If the deductible applicable to an occurrence is not satisfied by primary insurance, the Travelers has the right but not the duty to pay any part or all of the deductible in settlement of any claim or suit or in satisfaction of any judgment. On notice of such payment, the Named Insured shall promptly reimburse the Travelers.

As issuer of Household's primary coverage, Travelers had the option of either paying the first $1,000,000 of a claim under the primary policy or making the payment as a deductible under the excess policy.

During 1985 two lawsuits were filed that implicated the deductible. The first arose out of an automobile accident involving Vincent A. Griffith, Jr. ("the Griffith Claim"). The second also arose out of an auto accident involving a claim by Michael Bell ("the Bell Claim"). Both claimants brought suit against National. Pursuant to its obligations under the primary policy, Travelers defended both claims. In February 1988, Travelers settled the Bell Claim for $2,757,682 and elected to pay the $1,000,000 deductible. In March 1988,

---

1. The heading of the Policy is printed, in script, and reads "The Travelers Indemnity Company, Hartford, Connecticut". Immediately underneath the script print are two typed lines which read "THE TRAVELERS INDEMNITY COMPANY OF ILLINOIS" and "CATASTROPHE UMBRELLA POLICY—DECLARATIONS PAGE". Although the name of the insurer is not recited or defined in any fashion in the Policy, the page that sets out the provisions and exclusions of the Policy is titled "THE TRAVELERS INDEMNITY COMPANY OF ILLINOIS[,] Hartford, Connecticut". Furthermore, the signature page of the Policy states:

> In witness whereof, The Travelers Indemnity Company of Illinois has caused this policy to be signed by a Vice President and a Secretary at Hartford, Connecticut, and countersigned on the declarations page by a duly authorized agent of the company.

Ex. D, *Mot. for Permission to Amend Compl.* (filing no. 94) (Dec. 28, 1990).

The Policy was signed by an employee of the Chicago office of Corroon & Black, an insurance brokerage firm which was authorized to issue binders on behalf of Travelers Illinois. Ex. 2, *Household's Mem. in Support of Mot. to Dismiss* (filing no. 88) (Nov. 19, 1990). For purposes that will become evident, the court notes that the Policy Number is TJ–CUP–16T988–0–85H.

Travelers settled the Griffith Claim for $2,971,000 and also paid the full deductible. Travelers notified Household of the settlements and requested reimbursement of the $2,000,000 it had paid. By letter dated March 8, 1988, Household declined to reimburse Travelers and suggested that it look to National for payment. Travelers did so but National also refused to pay. Travelers then commenced this action on July 26, 1989 against Household and, in the alternative, against National alleging breach of contract against each.

Household counterclaimed,[2] alleging that Travelers breached its duty of good faith and fair dealing under the Policy by failing to consult with Household prior to settling the Bell and Griffith claims. It alleged that during the four preceding years in which Travelers had written excess coverage for Household, Travelers always had sought Household's advice and approval before consummating a settlement. Travelers' failure to honor this obligation, Household alleged, relieved it of any obligation it may have had under the Policy to pay the deductibles.

On May 11, 1990, the court granted Travelers' motion for summary judgment. The court held: (1) Travelers did not breach its obligations under the Policy by unilaterally settling the Bell and Griffith claims; and (2) Household and not National or any other Household subsidiary is the "Named Insured" for purposes of the deductible clause. Accordingly, the court concluded that Household breached its obligation under that clause to reimburse Travelers in the amount of $2,000,000.

Travelers filed a motion for interest on May 29, 1990. Oral argument was scheduled for November 9, 1990. A day before

the hearing, Household filed a motion to dismiss in which it argued that it "has determined that the insurance policy at the center of this lawsuit was issued by an Illinois corporation" thereby destroying the court's diversity jurisdiction. *Household's Mot. to Dismiss* at 1 (filing no. 86) (Nov. 8, 1990).[3] More specifically, Household argued that the Policy was not issued by Travelers. Instead, Household contended that the Policy was in fact issued by Travelers Illinois, a subsidiary of Travelers. At the hearing the court declined to act on Travelers' motion for interest and set forth a briefing schedule for the motion to dismiss.

The court heard oral argument on Household's motion to dismiss on December 17, 1990. At the hearing, counsel for Travelers made an oral motion to amend its complaint in order to elucidate the relationship between Travelers and Travelers Illinois. In an order issued the same day, the court noted that it was taking the motion to dismiss under advisement and gave Travelers until December 28, 1990 to file its amended complaint. On December 28 Travelers filed a motion for permission to amend its complaint. On January 15, 1991, Household renewed its motion to dismiss and filed a motion for leave to file amended pleadings. Finally, on April 1, 1991, the court heard oral argument on Household's motion to dismiss.

## I. Travelers' Motion for Permission to Amend the Complaint

Household does not oppose Travelers' motion for permission to amend the complaint. Indeed, it is Households' contention that the proposed amended complaint and the original complaint are flawed for the

---

**2.** Household also cross-claimed against National and filed a third-party complaint against Griffith Acquisition Corporation, which purchased National in 1986. Those claims are not germane to Household's motion to dismiss.

**3.** The court declines to interpret the jurisdictional issue as either Household's act of "cynical, bad faith gamesmanship", *National Car Rental's Mem. in Opp'n to Household's Mot. to Dismiss* at 8 (filing no. 80) (Dec. 4, 1991), *see* Ex. B to *Household's Reply Br. in Supp. of Its Mot. to*

*Dismiss* (Aff. of William F. Dolan) (filing no. 91) (Dec. 11, 1990), or Travelers' deliberate attempt to invoke federal jurisdiction where it does not exist. *See Tr. of November 9, 1990 Hearing* at 5–6 (filing no. 96) (Jan. 2, 1991) (where counsel for Travelers responded to the court's inquiry as to who issued the Policy by stating "Your Honor, frankly, I don't know. I really don't. I asked the question yesterday afternoon, and the people I talked with at Travelers don't know, because clearly the Policy is ambiguous").

same reasons.[4] In the absence of opposition, the court grants Travelers' motion for permission to amend the complaint. Fed. R.Civ.P. Rule 15(a).

## A. Additional Background

The amended complaint details the legal relationship between Travelers and Travelers Illinois. *Am.Compl.* ¶¶ 6–11. On January 1, 1970, Travelers, Travelers Illinois and other Travelers companies entered into a Reinsurance Portfolio Agreement ("Agreement"). The Agreement provides that Travelers would assume all rights and obligations of Travelers Illinois on all policies issued by Travelers Illinois:

> [Travelers] hereby agrees to reinsure automatically, from its inception, all liability under all policies and contracts issued thereafter ... and be liable for all risks therefore in the same manner and with the same force and effect as if the policies and contracts had been issued from their inception by [Travelers].

*Am.Compl.* ¶ 8. The Agreement also mandates that Travelers along with five other Travelers subsidiaries share *pro rata* in a reinsurance pool. Article I of the Agreement states:

> The companies, parties to the Agreement, shall participate in such portfolio [of all business produced for Travelers and all business ceded to it hereunder by its subsidiaries] in the following percentage share:

| | |
|---|---|
| The Travelers Indemnity Company | 70.0% |
| The Phoenix Insurance Company | 18.0% |
| The Charter Oak Fire Insurance Company | 5.0% |
| The Travelers Indemnity Company of Rhode Island | 3.0% |
| The Travelers Indemnity Company of Illinois | 3.0% |
| The Travelers Indemnity Company of America | 1.0% |

*Am.Compl.*, Ex. A. Finally, some of the reinsured risk is automatically ceded back to the Travelers companies:

> [Travelers] agrees to and does hereby cede to [c]ompanies, its percentage share, ... of all outstanding liability on risks in force in said Portfolio, and, as of the same time, [c]ompanies will assume their percentage share of all outstanding losses and loss expenses and all other outstanding underwriting expenses and dividends ...

*Am.Compl.*, Ex. A.

## II. Household's Motion for Leave to File Amended Pleadings

For the reasons that follow, the court grants Household's motion to dismiss. Accordingly, the court denies as moot Household's motion for leave to file amended pleadings.

## III. Household's Motion to Dismiss

### A. Applicable Standards

Although Household is silent as to the basis for its motion to dismiss, the court assumes that the motion is made pursuant to Rule 12(b)(1), Fed.R.Civ.P. A party may move to dismiss because of lack of subject matter jurisdiction at any time during the course of an action. Fed. R.Civ.P. Rule 12(b)(1); Fed.R.Civ.P. Rule 12(h)(3); *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24, 27 (2d Cir.1978), *cert. denied*, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979). Once challenged, the burden of establishing a federal court's subject matter jurisdiction rests on the party asserting jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Grafton Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979).[5] In contrast with a motion to dis-

---

**4.** *See Household's Renewed Mot. to Dismiss and Mot. for Leave Instanter to File Am. Pleadings* (filing no. 98) (Jan. 15, 1991) at 2; *Household's Mem. in Resp. to Travelers' Opp'n to Household's Mot. for Leave to File Am. Pleadings* (filing no. 103) (April 2, 1991) at 1.

The court notes that at the April 1, 1991 hearing counsel for Travelers indicated he was "not pressing" the motion for leave to file amended complaint. He reasoned that the court could

deny Household's motion to dismiss based on the original complaint and, thus, the amended complaint was unnecessary.

**5.** The court notes that the complaint must be construed broadly and liberally, in conformity with the principle set out in Rule 8(f), Fed. R.Civ.P., "but argumentative inferences favorable to the pleader will not be drawn." C. Wright & A. Miller, 5A *Federal Practice and*

miss based on Rule 12(b)(6), dismissals for lack of subject matter jurisdiction are not on the merits and therefore not accorded a *res judicata* effect that would prevent the reinstitution of the action in a court that has subject matter jurisdiction over the controversy. *Exchange*, 544 F.2d at 1130–31.

 As the Supreme Court explained in *Bender v. Williamsport Area School District*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (citations and quotations omitted):

> Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. For that reason, every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it. When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.

Indeed, the lack of subject matter jurisdiction may be asserted at any time by the court, *sua sponte*, either at the trial or appellate level. *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); Wright & Miller, § 1350 at 202. Furthermore, litigants cannot waive subject matter jurisdiction by express consent, conduct or estoppel. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) ("the consent of the parties is irrelevant, ... principles of estoppel do not apply, ... and a party does not waive the requirement by

failing to challenge jurisdiction early in the proceedings"); 13 Wright & Miller § 3522 at 66–7. Thus, the court recognizes the supreme parameters of its subject matter jurisdiction.

Concerning the court's diversity jurisdiction, the Supreme Court held, in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 377, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978), that neither the convenience of the litigants nor considerations of judicial economy permit a court to flout the statutory command of diversity jurisdiction under 28 U.S.C. § 1332. Finally, "[t]he policy of the statute calls for its strict construction." *Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1933).

### B. Discussion

Household advances a host of arguments in support of its motion to dismiss. The responses by Travelers and National are equally extensive. Nevertheless, the gravamen of Household's motion to dismiss is that the wrong plaintiff brought this action in the wrong court. More specifically, Household contends that Rules 17(a) and 19(b), Fed.R.Civ.P., require that the real party in interest be joined as an indispensable party, but that such joinder destroys the court's diversity jurisdiction. In response, Travelers argues (1) it is the real party in interest; (2) any ambiguity as to the appropriate plaintiff is resolved by Household's admission in its answer. National joins Travelers' opposition to the motion to dismiss and argues (1) Household has waived the indispensable party defense; (2) Travelers Illinois is not an indispensable party; and (3) the failure to join Travelers Illinois is not a jurisdictional defect. The court agrees with Household for the reasons that follow.

#### 1. *Jurisdiction by Pleadings?*

 The court first addresses an argument advanced by Travelers in opposition

---

*Procedure* § 1350 at 218–19 (1990 & Supp.1991) ("Wright & Miller").

The court also observes that the movant and the pleader may use affidavits and other extra-pleading materials to support and oppose the

challenge to subject matter jurisdiction. *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130 (2d Cir.1976).

to the motion to dismiss. Travelers contends that Household, by its own admission, has resolved any factual questions regarding the status of Travelers as the proper plaintiff in this action because Household's answer admitted that the Policy was issued by "the plaintiff Travelers". *Household's Am. Answer*, ¶ 6. Thus, Travelers concludes, Household's admission regarding the proper plaintiff establishes the validity of the court's jurisdiction. The court disagrees.

■ The court first notes that none of the cases cited by Travelers in support of its argument concern admissions that cure jurisdictional defects. Moreover, admissions which erroneously concede jurisdiction do not infuse the court with jurisdiction. In *Wojan v. General Motors Corp.*, 851 F.2d 969 (7th Cir.1988), General Motors, a Michigan citizen, admitted diversity with the plaintiff in its answer and amended answer. After five years of litigation, General Motors' counsel discovered the lack of diversity jurisdiction. The district court dismissed the action for lack of jurisdiction. The Seventh Circuit, addressing the plaintiff's Rule 11 claim, acknowledged that the district court properly dismissed the action:

> [The plaintiff] was obligated to ensure that her jurisdictional allegations rested on a sound factual basis. She could not merely rely on GM's rather late and erroneous admission of diversity jurisdiction.

*Wojan*, 851 F.2d at 974.

Here, the burden was on Travelers to ensure that it initiated this action in the name of the proper plaintiff and the proper state of incorporation. Otherwise, if Household's admissions could establish jurisdiction, the court, in essence, would permit the parties to confer subject matter jurisdiction through erroneous allegations. Accordingly, the court rejects Travelers'

contention that any factual dispute regarding the proper plaintiff in this action is resolved by Household's answer.[6]

### 2. *Rules 17(a) and 19(b)*
#### a. Rule 17(a)

■ Rule 17(a) states, in relevant part, "[e]very action shall be prosecuted in the name of the real party in interest." The purpose of 17(a) is to protect a defendant from facing a subsequent similar action brought by one not a party to the present proceeding. *Prevor–Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Management, Inc.*, 620 F.2d 1, 4 (1st Cir.1980). *See also Motta v. Resource Shipping & Enterprises Co.*, 499 F.Supp. 1365, 1371 (S.D.N.Y.1980) (rule serves to insure that the proper *res judicata* effect will be accorded to any judgment); *Hercules Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101, 105 (S.D.N.Y.1976) (purpose of rule is to ensure that the action is brought in the name of the party who possesses the substantive right being asserted). The question of which party is the real party in interest is procedural, not substantive. *Brocklesby Transport v. Eastern States Escort Services*, 904 F.2d 131, 133 (2d Cir.1990). Accordingly, "in diversity cases federal law governs the issue of in whose name a lawsuit must be brought, even though state law controls the underlying substantive right ..." *Brocklesby*, 904 F.2d at 133.

Citing Rule 17(a), Household argues that Travelers clearly was not a party to the Policy and, accordingly, Travelers is not a party in interest. Instead, the Policy represents a contract entered into by Travelers Illinois with Household and, thus, is a contract between two Illinois-based corporations.

In response, Travelers suggests that Household places "a misguided emphasis" on its claim that Travelers Illinois is the

---

**6.** Both Household and Travelers rely on a recent note in the Hastings Law Journal. The court cites with approval the following passage from the note:

> Regardless of what litigants do or what they intend to do, subject matter jurisdiction is invincible. The prohibition on federal jurisdiction over cases and controversies between

non-diverse parties cannot be waived by consent, conduct, estoppel, inaction or stipulation.

*Second Bites at the Jurisdictional Apple: A Proposal for Preventing False Assertions of Diversity of Citizenship*, 41 Hastings L.J. 1417, 1431 (1990) (footnotes omitted).

real party in interest. In Travelers words, "[r]egardless of [which] entity issued a policy to Household, the real party in interest for the purposes of this action to secure reimbursement of deductibles paid under the Policy is, ... [Travelers]." *Travelers' Mem. In Opp'n to Household's Mot. to Dismiss* at 6 (filing #89) (Nov. 30, 1990). More specifically, Travelers points to the Agreement and contends that Travelers wears the shoes of Travelers Illinois with regard to the policies issued by Travelers Illinois.[7] Travelers argues that this unity of identity makes it the most vitally interested party in any claim for the reimbursement of deductible payments.[8]

The court agrees with Household for several reasons, the combination of which justify granting Household's motion to dismiss.

### (i) *Who are the Parties to the Contract?*

 First, the court is not convinced that Travelers was a party to the contract with Household. Although the format of the Policy is confusing, it appears that the Policy was issued by Travelers Illinois. The paper on which the Policy is printed bears the engraved heading—in script—"The Travelers Indemnity Company, Hartford, Connecticut". Nevertheless, the typed lines that appear under the engraved heading proclaim "THE TRAVELERS INDEMNITY COMPANY OF ILLINOIS". Moreover, the page that sets forth the Policy's provisions and exclusions is styled "THE TRAVELERS INDEMNITY COMPANY OF ILLINOIS" and the signature page of the Policy states that "Travelers Indemnity Company of Illinois has caused this policy to be signed". Accordingly, based solely on the language of the Policy, Travelers is not the party in interest for purposes of bringing this action. *See Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F.Supp. 858, 863 (E.D.Va. 1980) (claim dismissed because "sister corporation" lacked standing to assert breach of contract claim on behalf of related corporation in spite of close financial and organizational ties with related corporation).

### (ii) *The Agreement*

Second, the Agreement does not alter the identity of the parties to the Policy and thus does not define the party in interest for purposes of Rule 17(a). While the Agreement may be "a business agreement among the member insurance companies", *Travelers' Mem. In Opp'n to Household's Mot. to Dismiss* at 9, it is not an agreement with Household. Travelers did not assume the Policy. Instead, it automatically reinsures liability under the Policy. The reinsurance obligation involves the *pro rata* "Portfolio" in which Travelers has—at most—a seventy percent share. Even after reinsurance, Travelers Illinois remains responsible for three percent of the liability. Furthermore, under the Agreement, thirty percent of the reinsured risk is automatically ceded back to Travelers Illinois and the other Travelers companies. Thus, Travelers' own internal corporate structure and billing arrangements do not redefine the contracting parties to the Policy.[9] Admittedly, to some extent Travelers and Travelers Illinois share an interest in securing a judgment in favor of Travelers. Nevertheless, the court does not believe

---

7. This point was underscored by the statement made by counsel for Travelers at the December 17, 1990 hearing:

 I can't think of any argument in this world that would made Travelers Indemnity, the Illinois corporation, a party to this action because it has no interest in this policy.

 *Tr. of Dec. 17, 1990 Hearing* at 22 (filing no. 97) (Jan. 14, 1991).

8. Travelers argues that this relationship is made "undeniable" by a Form UCC–1 Financial Statement ("the Form") executed by Travelers Illinois and filed with the Illinois Secretary of State. Ex. C, *Am.Compl.* The Form explicitly refers to the Agreement and indicates that Travelers Illinois and the other Travelers companies have agreed to assign certain interests to Travelers.

 The court agrees with Household's reply to the extent that the Form does not change the identity of the issuer of the Policy, establish privity of contract between Household and Travelers, or alter the rights of the parties to the Policy. Rather, the Form serves to repel competing liens.

9. Were this the case, the Travelers Indemnity Company of Rhode Island—an Agreement participant with a three percent stake in all proceeds and losses—would be able to assert diversity jurisdiction by bringing this action.

that the shared interest is mutually inclusive to the extent that Travelers "wears Travelers Illinois' shoes" for purposes of Rule 17(a). Finally, it bears noting that Travelers does not cite authority for the proposition that an insurance contract is assigned to another entity by virtue of a reinsurance contract.[10]

### (iii) *Other Litigation*

Travelers Illinois is the party in interest for purposes of Rule 17(a) for a third reason: Travelers Illinois—not Travelers—has filed suit under the Policy in another federal district court. In the United States District Court for the Northern District of Illinois, Travelers Illinois filed an action ("the Illinois action") for a declaratory judgment against two former Household subsidiaries under the Policy.[11] There, Travelers Illinois alleges that it "insured Household International under a Catastrophe Umbrella Policy, policy number TJ–CUP–16T988–0–85H" and that Travelers Illinois "has paid more [in settlement of the underlying claims] under the 1985 Travelers excess policy than was required." Exhibit B, ¶¶ 9 and 31. At the hearing on April 1, 1991, counsel for Travelers acknowledged that the Illinois action raises "a legitimate question as to whether [the] action should have been brought by Travelers ..." but concluded that either Travelers or Travelers Illinois could have brought the Illinois action because it is an action for a declaratory judgment. This last proposition is supported by neither precedent nor logic. Instead, the Illinois action demonstrates that, prior to initiating this action, it was Travelers position that Travelers Illinois issued the Policy and was the proper party to bring a suit to enforce rights to recover amounts due to it under the Policy. Accordingly, the Illinois action validates

Household's argument that Travelers Illinois is the real party in interest in this action and vitiates Travelers contention that Travelers Illinois "has no interest in this [P]olicy." *Tr. of Dec. 17, 1990 Hearing* at 22.

### b. Rule 19(b)

Although the second sentence of Rule 17(a) contains a specific enumeration of a number of persons who are real parties in interest, "Rule 19 always must be consulted to determine if all the necessary parties have been joined." 6A Wright, Miller & Kane § 1543 at 338. Thus, the court turns to Rule 19.

Rule 19(b) states:

If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Rule 19(b) therefore, sets forth four nonexclusive, overlapping factors to be considered in the court's evaluation of Travelers Illinois indispensability. *See* Fed.R.Civ.P. Rule 19, Advisory Commit-

---

**10.** Indeed, the general rule is that, absent the reinsurer's assumption of direct liability to the original insured by contract, there is "no privity of contract between the person insured and the reinsurer." 13A Appleman, *Insurance Law and Practice,* § 7694 at 528–29 (1976 & 1991 Supp.). *See also Brogan v. Macklin,* 126 Conn. 92, 95, 9 A.2d 499 (1939); 44 Am.Jur.2d, *Insurance* § 1841 at 831–2 (1982 & Supp.1991) (generally no privity between original insured and reinsurer); 46 C.J.S., *Insurance* §§ 1221 and 1231 (1946 & Supp.1991) (ordinarily "no privity of contract

between reinsurer and the person originally insured").

**11.** *See The Travelers Indemnity Company of Illinois v. Northwestern National Insurance Co., The Vons Companies, Inc. and TG & Y Stores Company, Inc.* (No. 88 C 10648) (N.D.Ill.). Ex. B *Household's Mem. in Resp. to Travelers' Opp'n to Household's Mot. for Leave to File Am. Pleadings,* (filing no. 103) (April 2, 1991).

tee's Notes (the four "factors are to a certain extent overlapping, and they are not intended to exclude other considerations which may be applicable in particular situations").[12] Furthermore, "[i]f joinder of the absentee party would destroy diversity and the court 'in equity and good conscience' cannot proceed without him, the action will have to be dismissed." 7 Wright, Miller & Kane, § 1610 at 146–48. Although the court has "substantial discretion", 7 Wright, Miller & Kane, § 1604 at 66, in evaluating the factors set forth in Rule 19(b), the court bears in mind the Second Circuit's admonition that "very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Jaser v. New York Property Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir.1987).

Travelers and National join in the argument that Travelers Illinois is not an indispensable party in this action because judgment rendered in its absence provides complete relief among the parties. Travelers contends that the Agreement provides that Travelers assumes all of the risks and liabilities under policies issued by Travelers Illinois "in the same manner and with the same force and effect as if the policies and contracts had been issued from their inception by [Travelers]." *Am. Compl.* Exhibit A at 4. Furthermore, Travelers argues that it paid the deductible payments on behalf of Household to settle the Bell and Griffith Claims, Ex. B at ¶ 6 (Aff. John R.

Gorecki, Jr.), *Mem. in Opp'n to Household's Mot. for Leave to File Am. Pleadings*, and thus is entitled to recover the payments from Household.

Household's reply is direct: Precedent does not support the proposition that a party to a contract is not an "indispensable party". The court agrees with Household.

■ The court's research has failed to find any case on similar facts that has held that a party to a contract is not an indispensable party. In fact, the precedent supports the proposition that a contracting party is the paradigm of an indispensable party. *See Cloverleaf Standardbred Owners Ass'n, Inc. v. National Bank of Washington*, 699 F.2d 1274, 1279–80 (D.C.Cir.1983) (district court did not abuse its discretion in dismissing breach of contract action brought against bank in which third party with whom the contract was made had deposited funds, as the obligation of the third party was centrally at issue in the action and the third party was indispensable but joinder would destroy diversity jurisdiction); *Ward v. Deavers*, 203 F.2d 72, 75 (D.C.Cir.1953) (final judgment reversed because party to contract deemed indispensable was not joined); *Japan Petrolium Co. (Nigeria) Ltd. v. Ashland Oil Inc.*, 456 F.Supp. 831, 836 n. 7 (D.Del.1978) (if the "rights sued upon arise from a contract, all parties to the contract must be joined"); *Jacobsen v. Luckenbach Steamship Co.*, 201 F.Supp. 883, 889 (D.Or.1961) ("all parties [to a contract] are deemed indispensable and should be joined").[13]

---

**12.** The Supreme Court has indicated that Rule 19(b) presents four constituencies whose interests are balanced by the rule: (1) the defendant; (2) the absent party; (3) the courts and the public; and (4) the plaintiff. *Provident Tradesmens Bank & Trust v. Patterson*, 390 U.S. 102, 109 n. 2, 88 S.Ct. 733, 738 n. 2, 19 L.Ed.2d 936 (1968). *See also Prescription Plan Serv. Corp. v. Franco*, 552 F.2d 493, 497 (2d Cir.1977).

**13.** *Cf. Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 76 (2d Cir.1984) (district court did not abuse its discretion in holding that parent corporation was indispensable to counterclaim for breach of contract, and thus dismissing claim for lack of diversity jurisdiction, where the parent corporation was the sole obligor on three of the contracts at issue and possessed

rights arising from contracts that had been transferred to partnership between parent and wholly owned subsidiary which were intertwined with issues bound to be raised in action solely against subsidiary); *Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 81–82 (1st Cir.1982) (district court did not abuse its discretion in holding that parent corporation was indispensable to claim for breach of contract brought by subsidiary corporation where parent and subsidiary had substantially identical interests and adverse ruling against subsidiary would have impaired parent's probability of success in a future proceeding); *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir.1980) (action seeking rescission of contract must be dismissed unless all parties to the contract—and others having a substantial

For example, in *Deavers* the lower court entered judgment in the absence of a party to the contract. When the indispensable party argument was first raised on appeal, the District of Columbia Court of Appeals held that, without the missing party to the contract, any attempt to seek relief on the basis of the contract failed. The court concluded that "[b]ecause the transaction could not be rescinded as to [the missing party], it could not be rescinded at all." *Deavers*, 203 F.2d at 75. Accordingly, based on precedent alone, the court concludes that Travelers Illinois—a party to the contract—is an indispensable party. In the alternative, the court turns to the four-factor analysis set forth in Rule 19(b) and explained in *Provident*, and concludes that Travelers Illinois is an indispensable party.

### (i) *Household's Interests*

The court first weighs Household's interests. Practically, if Travelers Illinois is not joined the prejudice to Household is clear: Household will have a two million dollar judgment entered against it. On a jurisdictional basis the harm to Household is equally palpable. Household's contention is that the court lacks subject matter jurisdiction. Thus, due to a constitution- and statutory-based infirmity, every order entered by the court damages Household because the orders are issued in the absence of jurisdiction. Certainly, it is difficult to fathom a set of circumstances more prejudicial than a court of limited jurisdiction exercising jurisdiction over an action the court is circumscribed from hearing.

Household's interest also hinges upon the preclusive effect on Travelers Illinois, if any, of a judgment rendered by this court. Claim preclusion—*res judica-* ta—may be asserted in a later action only by and against parties, and those in privity with parties to the earlier action. *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir.), *cert. denied sub nom. Rothenberg v. Amalgamated Sugar Co.*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987). The court has already noted that, generally, there is no privity of contract between the insured and the reinsurer. *See infra* pp. 525–26. Accordingly, as a nonparty, Travelers Illinois may not be precluded from litigating anew other claims or issues resolved unfavorably to it in this action.[14]

### (ii) *National's Interest*

National's interest must be examined under the first factor, since National is a defendant. National's interest is difficult to assess. Obviously, National opposes the motion to dismiss; the court, in its summary judgment ruling, held that Household—not National or any other Household subsidiary—is the "Named Insured" for purposes of the deductible clause. Consequently, National argues that new, state court litigation will duplicate the time and money it has already expended defending this action. Although National characterizes itself as the "prevailing defendant", the court notes that there remain active claims by Household against National. Thus, it is not clear that National's interest will best be protected by dismissing the action.

### (iii) *The Interests of the Courts and Public*

Concerning the third factor—the courts and the public—the interests weigh in favor of dismissal. The efficient resolution of disputes is the primary interest of the courts and the public. *Provident*, 390 U.S. at 111, 88 S.Ct. at 739 (the Court recog-

---

interest in it—can be joined); *F & M Distributors, Inc. v. American Hardware Supply Co.*, 129 F.R.D. 494, 497–98 (W.D.Pa.1990) (in breach of contract action by computer equipment owner against lessee of remarketed computer equipment, remarketing company was necessary party where only contracts were between remarketing company and owner and remarketing company and lessee).

**14.** *See Johnson & Johnson v. Coopervision, Inc.*, 720 F.Supp. 1116 (D.Del.1989), where the court dismissed an action brought by a parent corporation due to failure to join a non-diverse subsidiary. Johnson & Johnson represented that its action on behalf of its subsidiary would result in collateral estoppel, and thus the defendant faced no risk of duplicative judgments. The court disagreed, noting that the defendant was prejudiced by any prospect of future litigation. *Johnson*, 720 F.Supp. at 1124.

nized the "public stake in settling disputes by wholes"). Litigating the merits of this action in state court with Travelers Illinois present will advance the efficient administration of justice because all of the interested parties will be joined in one forum and issues of inconsistent relief and multiple litigation will be erased. Undoubtedly, much time and expense have been expended in this forum. And there will be some duplication of effort if the action is initiated in an Illinois state court. However, Travelers' failure to bring this action in the name of Travelers Illinois—the real party in interest—resulted in the court's improper invocation of its limited jurisdiction. The court is powerless to adjudicate this action. Accordingly, the interest in avoiding duplication of efforts assumes a secondary role, eclipsed by the constitutional and statutory limitations placed on this court's dominion.

### (iv) *Travelers' Interests*

In regard to the fourth factor, if Travelers Illinois is not joined the prejudice to Travelers is considerable but not dispositive. Certainly, Travelers has a strong interest in preserving the judgment in its favor since it has prevailed in the underlying action. Nevertheless, the court must bear in mind the possibility of multiple litigation, inconsistent relief or the imposition of liability upon one party that properly may be shared with another party. The close interrelationship between Travelers and Travelers Illinois is evident. The Agreement illustrates their shared interests in this cause of action; the liability on risks are ceded to Travelers by its subsidiaries in *pro rata* form and thus relief granted to Travelers likewise benefits the subsidiary, Travelers Illinois, *to some extent.* Nevertheless, if Travelers Illinois is deemed indispensable, Travelers is left with a legitimate alternative: sue Household in state court. Thus, Travelers and Travelers Illinois have an adequate remedy elsewhere.

Moreover, a determination that Travelers Illinois is an indispensable party should ensure that, in the future, Travelers will not invoke federal jurisdiction in a self-serving fashion. After all, Travelers cannot have it both ways: for purposes of *The Travelers Indemnity Company of Illinois v. Northwestern National Insurance Co., The Vons Companies, Inc. and TG & Y Stores Company, Inc.* (No. 88 C 10648) (N.D.Ill.), it was Travelers Illinois that issued the Policy, while, for purposes of this action, it was Travelers that issued the Policy.

Based on the foregoing analysis, and guided by equity and good conscience, the court concludes that this action cannot proceed without Travelers Illinois, an indispensable party. And in the presence of Travelers Illinois this court is not empowered to exercise diversity jurisdiction.

### (c) Waiver of the Indispensable Party Defense

 Finally, Travelers and National argue that Household has waived the indispensable party defense. Citing *Mastercrafters Clock & Radio Co. v. Vacheron & Constantin–Le Coultre Watches, Inc.*, 221 F.2d 464, 467 (2d Cir.), *cert. denied* 350 U.S. 832, 76 S.Ct. 67, 100 L.Ed. 743 (1955), they contend that Household has simply waited too long to move to dismiss. Fed. R.Civ.P. Rule 12(h)(2). The court disagrees.

In *Mastercrafters* the Second Circuit devoted one sentence to the waiver issue. Judge Frank stated: "It would seem that the Swiss manufacturer was not an indispensable party; but, even if it was, plaintiff waived its absence as a party by not asserting that fact as a defense." *Mastercrafters*, 221 F.2d at 467. In contrast, the Supreme Court devoted a considerable portion of its unanimous opinion in *Provident* to the notion of waiver and concluded that a party does not waive the defense of failure to join an indispensable party by neglecting to raise it. *Provident*, 390 U.S. at 109–12, 88 S.Ct. at 737–39. *See also* 7 Wright, Miller & Kane § 1609 at 128–144. Indeed, an objection based on the absence of an indispensable party can be raised at any time, even by an appellate court—as was the case in *Provident*. Accordingly, the court finds no merit to the argument that Household has waived the indispensable party defense.

**530**

### Conclusion

Based on the foregoing, the court grants Travelers' motion for leave to file an amended complaint, denies Household's motion for leave to file amended pleadings, and grants Household's motion to dismiss. As the court in *Potomic Passengers Ass'n v. Chesapeake & Ohio Ry. Co.*, 520 F.2d 91, 95 n. 22 (D.C.Cir.1975) noted, "[I]f a federal court is powerless to adjudicate a controversy, it is duty bound to recognize that fact, however belated its recognition." Here, the court reluctantly concludes that the sole jurisdictional basis for bringing this controversy to a federal tribunal has been destroyed.

SO ORDERED.