**Ruth Linares POLANCO, individually and as trustee and representative of the estate of Joel de Jesus Linares Polanco, Plaintiff,**

v.

**H.B. FULLER COMPANY, Defendant.**

**Civil File No. 3–96–8.**

United States District Court, D. Minnesota, Third Division.

Sept. 23, 1996.

**1514**

Scott M. Hendler, Hendler Law Firm, Austin, TX, Sam Heins, Kent Williams, and Melinda Morales, Heins, Mills & Olson, Minneapolis, MN; Michael J. Brickman and Christian Hartley, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, of counsel, for plaintiff.

Janice M. Symchych, Timothy E. Branson and Peter C. Beckerman, Dorsey & Whitney, L.L.P., Minneapolis, MN, for defendant.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

### INTRODUCTION

Presently before the Court is defendant's motion to dismiss. For the following reasons, the motion is GRANTED.

### BACKGROUND

This case presents several difficult jurisdictional and procedural questions. Common to them is the issue of imputing the conduct of a subsidiary to its corporate grandparent. The following background is taken from the pleadings as well as extra-pleading material submitted by both parties. Ruth Linares Polanco, a Guatemalan citizen, has brought this wrongful death action pursuant to Minn. Stat. § 573.02. Ruth is the sister of Joel Polanco, a sixteen-year-old Guatemalan boy who died in January 1993.

Guatemala and other Latin American countries have experienced a phenomenon in which thousands of children live on the streets. The Guatemalan social system is apparently unable or unwilling to meaningfully address this problem. (Bovino Aff. attached as Ex. 2 to Hendler Aff. para. 9.) As a result, these children are on their own. Many have turned to industrial-grade adhesives for comfort marketed under names such as "Resistol", "Aralite" and "Plasticola." The adhesives at issue here are not legitimately available for retail sale to children, but are often purloined from legitimate use and divided into baby-food jars or "baggiesized" doses. Inhalation produces a high, and a warm, pleasing sensation in the typically empty bellies of the street children. It is a false respite, however; the glue is highly addictive and repeated abuse leads to neurological damage and death. Plaintiff alleges that her decedent became addicted to defendant's glue and died as a result.

Defendant H.B. Fuller (hereafter "Fuller–U.S.") is not a monolithic entity. Fuller–U.S. owns 95% of Kativo, a Panamanian corporation. Kativo, directly, and through its own subsidiary, in turn owns all the stock of

Fuller–Guatemala ("Fuller–Guatemala"), a Guatemalan corporation. (1/19/95 Baker Aff. para. 5; Hendler Aff.Exh. 28.) There is no dispute that the physical manufacture of the glue was by Fuller–Guatemala (which markets Resistol and Aralite in Guatemala), a fact of central importance to the present dispute. (Coffin Aff. attached as Ex. D to 3/18/96 Baker Aff. paras. 1–2; Ray, Jr. Aff. attached as Ex. D to 3/18/96 Baker Aff. paras. 1, 4.)

Plaintiff originally brought suit against Fuller–U.S., in the Northern District of Texas. Plaintiff then voluntarily dismissed her suit under Fed.R.Civ.P. 41(a)(1). Plaintiff subsequently filed suit in this district against Fuller–U.S., Fuller–Guatemala and Kativo. Plaintiff again invoked 41(a)(1) to dismiss Kativo and Fuller–Guatemala from the complaint.

Fuller–U.S., the only remaining defendant, moves for dismissal on four principal grounds. First, defendant claims that diversity jurisdiction does not exist because: (1) it is being sued for the acts of its subsidiary, a Guatemalan corporation, and (2) as the manufacturer of the allegedly used and defective glue, Fuller–Guatemala is an indispensable party which must be joined. In either case, Guatemalan citizens would (or should be) on both sides of the suit, and diversity will not be complete.

Second, defendant urges that the matter be dismissed on forum non conveniens grounds, arguing that every relevant piece of evidence is likely to be in Guatemala. Moreover, defendant notes that there are approximately a half-dozen Guatemalan manufacturers whose adhesives find their way into the hands of children. (Acevedo Aff. attached as Ex. C to 3/18/96 Baker Aff. para. 11.) These products are generically referred to as "Resistol," although that trademark is held by Kativo. Unable to implead these defendants into an American court (which would likely be unable to exercise personal jurisdiction over them) defendant may be hampered in its ability to show that someone else's products were inhaled by Joel Polanco.

Third, Guatemala's Civil Code provides for a one-year period of "prescription" in wrongful death actions. (Garro Aff. attached as Ex. 1 to Hendler Aff. paras. 15–16.) Prescription is a term of civil law jurisdictions such as Guatemala, rather than common law jurisdictions such as the United States. In effect, prescription is very similar to the lapsing of a limitations period. However, defendant argues that Guatemala's Code speaks directly to the right of recovery, rather than the procedure by which recovery may be had. It is accordingly substantive, and defendant argues that Minnesota choice of law principles (which this Court is bound to observe under *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941)) compel the application of the one-year period to bar plaintiff's claims. Plaintiff filed this suit one day before the expiration of Minnesota's three-year limitations period.

Finally, defendant argues that plaintiff's second dismissal (of defendants Kativo and Fuller–Guatemala) operates as an adjudication on the merits precluding her from maintaining claims against Fuller–U.S. under Fed.R.Civ.P. 41(a)(1). Because the Court's analysis of the jurisdictional and forum non conveniens issues is dispositive, it is unnecessary to consider the choice of law or res judicata questions raised by this case.

## DISCUSSION

### I. Jurisdiction

Plaintiff's complaint plays a central role in the analysis of this issue. 28 U.S.C. § 1332(a)(2) confers diversity jurisdiction where the a controversy involves "citizens of a State and citizens or subjects of a foreign state." As is true in "domestic" cases, diversity must be complete. *Faysound Ltd. v. United Coconut Chemicals, Inc.*, 878 F.2d 290 (9th Cir.1989). Fuller–U.S. contends that Fuller–Guatemala is the real target of plaintiff's suit, and its citizenship should be considered in determining whether diversity exists.

### A. Standard of Decision.

Analysis begins with the principle that the Court is not bound solely to consideration of the parties' characterization of the claims.

Instead, the Court must affirmatively satisfy itself that subject-matter jurisdiction exists:

> [The] court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because the issue in a factual 12(b)(6) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Osborn v. United States,* 918 F.2d 724, 730 (8th Cir.1990).

### B.   Plaintiff's Complaint

Plaintiff's original complaint in this district charged all three defendants (Fuller–U.S., Fuller–Guatemala and Kativo) with being "engaged in the business of designing, manufacturing, marketing, and distributing adhesive products ..." (Pl's Complaint para. 6.) Counts I–III of that complaint involve different, but garden-variety product liability theories (defective design, failure to warn and negligence). When plaintiff dismissed Fuller–Guatemala, she dismissed the actual manufacturer of the product. While she amended her complaint to delete references to the dismissed defendants, the substance of her complaint was unchanged. By the terms of her complaint, she continues to charge Fuller–U.S. with the manufacture of the product.

■ Aside from the language of the pleadings, plaintiff concedes that the glue at issue was manufactured and distributed by Fuller–Guatemala, not Fuller–U.S. There can be no question that plaintiff is seeking to hold Fuller–U.S. responsible for Fuller–Guatemala's products. This is at odds with plaintiff's contention in her brief that she seeks only to hold Fuller–U.S. responsible for its own conduct in "conceiving the design" of the adhesives. This theory of liability, for which plaintiff offers no evidence of recognition under Minnesota tort law, is nowhere encompassed by the clear terms of plaintiff's complaint. Therefore, plaintiff cannot rely on the "conceiving the design" theory to avoid the consequences of her pleading.

### C.   The "Attribution Rule"

It appears that few courts have directly addressed the question of whether a suit seeking to hold a corporate parent liable for the acts of its subsidiary implicates jurisdictional concerns. In a line of cases, the Fifth Circuit has developed what defendant describes as the "attribution rule": where a corporate parent is sued for the acts of its subsidiary, "attribution" of the subsidiary's citizenship to the parent is—appropriate to limit the exercise of diversity jurisdiction. *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553 (5th Cir.1985) was a diversity suit brought by Texas residents against an Oregon corporation for the acts of its wholly-owned subsidiary, a Colorado corporation. On appeal after plaintiffs prevailed at trial, the Fifth Circuit undertook a sua sponte review of the district court's subject-matter jurisdiction. After concluding that plaintiffs were likely Colorado citizens, the court stated that assuming they were, diversity would have been destroyed by the presence of a Colorado defendant. For "[t]here was, or should have been, such a defendant." *Freeman,* 754 F.2d at 556.

The court noted plaintiff's reliance on an alter ego theory to hold the parent corporation liable for the acts of its subsidiary, despite the fact that each retained its distinct corporate identity. *Id.* Drawing from cases dealing with consolidated corporations and corporate alter egos, the court concluded that two related corporations acting as one should be treated as a single entity for jurisdictional purposes. *Id.* at 558. Application of this analysis, the court added, was specifically limited to those cases where it would effectuate Congress' intent to limit diversity jurisdiction to cases involving truly diverse parties. *Id.* at 558–559.

The *Freeman* court, without finding any fraud on the part of the defendant, nevertheless observed that the distinctions between the parent and subsidiary were "legal fictions." 754 F.2d at 558. While formally

separate, the two shared office space and employees "who may have worn two hats, but who received their salaries from one payroll." *Id.* at 553. In light of these facts, the Fifth Circuit stated, "courts will not permit themselves to be blinded or deceived by mere forms of the law, but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require." 754 F.2d at 557 (*quoting Chicago, Milwaukee, & St. Paul Co. v. Minneapolis Civic & Commerce Ass'n.*, 247 U.S. 490, 501, 38 S.Ct. 553, 557, 62 L.Ed. 1229 (1918)). This conclusion required dismissal for lack of subject-matter jurisdiction, because Colorado citizens were on both sides of the lawsuit, destroying complete diversity.

Although the Fifth Circuit describes its analysis as one imputing the citizenship of a corporation's "alter ego" to it, that court has not limited this analysis to situations where the defendant corporation and its unsued subsidiary/parent are distinct in name only. It has also applied to cases in which the substantive claim asserted by the plaintiff is in truth a claim against the unsued company. *See Kuehne & Nagel (AG & Co.) v. Geosource, Inc.*, 874 F.2d 283, 290–291 (5th Cir. 1989) (suit by alien corporation against Texas corporation and its *unserved* Cayman Islands subsidiary properly dismissed because Texas defendant assumed subsidiary's citizenship on plaintiff's claim against parent for subsidiary's breach of contract); *see also Panalpina Welttransport GmBh v. Geosource, Inc.*, 764 F.2d 352, 354–355 (5th Cir.1985):

> As we perceive the requirements of 28 U.S.C. § 1332, with its jurisprudential glosses, the alter ego doctrine may be used to add places of citizenship to the abrogation of diversity jurisdiction but may not be used to extend such jurisdiction. Consistent therewith, if a parent were sued as a result of activities of a subsidiary, the alter ego doctrine would attribute the subsidiary's place of incorporation to the parent even if such resulted in destroying complete diversity.

▮ Defendant argues that plaintiff's substantive claim is one for various manufacturing torts. Because Fuller–Guatemala is the manufacturer of the glue, Fuller–U.S. asserts that it is being sued for the acts of its subsidiary, and thus Fuller–Guatemala's citizenship should be imputed to it. Including the citizenship of Fuller–Guatemala places Guatemala citizens on both sides of the lawsuit and deprives the court of diversity jurisdiction.

Plaintiff makes two principal arguments to avoid this result. First, plaintiff argues that the Fifth Circuit's approach has been roundly rejected by other courts. Plaintiff directs the Court's attention to: *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 61 (1st Cir.1993) *cert. denied*, 510 U.S. 823, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993) (absent violation of corporate form, focus must be solely on citizenship of entity whose conduct is at issue); *Schwartz v. Electronic Data Systems, Inc.*, 913 F.2d 279 (6th Cir.1990) (citizenship of parent not attributed to wholly-owned subsidiary); *U.S.I. Properties Corp. v. M.D. Construction Co., Inc.*, 860 F.2d 1 (1st Cir. 1988) *cert. denied*, 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989) (Puerto Rican corporation does not assume citizenship of its Delaware grandparent); and *Danjaq, S.A. v. Pathe Communications Corp.*, 979 F.2d 772 (9th Cir.1992) (subsidiary's principal place of business irrelevant in determining parent's citizenship). These cases perhaps reflect more concern for corporate formalities than is observed in the Fifth Circuit. Each makes clear that, regardless of the degree of intertwining between parent and subsidiary, separate incorporation will be credited unless the required formalities are not met. However, not one of these cases, defendant correctly points out, addresses the question before this Court. There is no suggestion in any of them that the corporation whose citizenship is sought to be attributed elsewhere is the actor responsible for the challenged conduct.

In *U.S.I. Properties*, for example, only the Puerto Rican granddaughter corporation was being sued; the opinion makes no reference to the *conduct* of its grandparent as being an issue necessarily embraced by the plaintiff's claims.

One case squarely addressing the Fifth Circuit's approach is *Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114

(D.C.Cir.1991) *cert. denied,* 502 U.S. 822, 112 S.Ct. 85, 116 L.Ed.2d 57 (1991). The case involved a corporation which had allegedly defrauded Pyramid. Rather than sue the corporation, Pyramid sued its corporate parent. The D.C. Circuit acknowledged that "the parent corporation is being sued solely for the acts of its completely controlled subsidiary." 924 F.2d at 1120. Despite this, *Pyramid* rejected the Fifth Circuit's attribution rule, describing it as "wholly anomalous" to focus on the subsidiary for jurisdictional purposes activities "where the substantive claim is about the parent, and any remedy must come from the parent's pocket." *Id.* The court also believed that the Fifth Circuit's approach is, "in some ways the reverse of veil piercing," for it looks through the parent corporation and treats the subsidiary as if it were the controlling entity. *Id.*

The persuasiveness of *Pyramid* is undermined by its failure to describe the basis for piercing the corporate veil to reach the parent corporation; the court simply "assume[d]" the appropriateness of veil piercing, as the parties and trial court had not developed the issue. 924 F.2d at 1116. Thus, why the substantive claim was in fact "about the parent" is unknown. To the extent that *Pyramid* stands for the proposition that a parent corporation is automatically liable for the torts of its subsidiary so as to provide a plaintiff with a direct remedy against the parent (thus side-stepping the limitations imposed by 28 U.S.C. § 1332), this Court respectfully disagrees.

While several other district courts outside the Fifth Circuit have discussed the attribution rule, none have expressly adopted it nor further explicated its conceptual and statutory underpinnings. *See, e.g., Rouhi v. Harza*

*Engineering,* 785 F.Supp. 1290, 1295 (N.D.Ill.1992) (favorably noting *Panalpina* rule's effectuation of congressional intent, though finding it unnecessary to consider); *Beightol v. Capitol Bankers Life Ins. Co.,* 730 F.Supp. 190, 193 n. 2 (E.D.Wis.1990) (noting that alter ego theory is used to limit diversity jurisdiction). In *Barnett v. Borg–Warner Acceptance Corp.,* 488 F.Supp. 786 (E.D.Ark. 1980), the court considered a plaintiff's argument that defendant and its non-diverse separately incorporated subsidiary were actually one entity. In response, the court noted that *even if this were true* [1], the defendant would in effect have dual places of incorporation, which would also deprive the court of diversity jurisdiction. *Id.* at 794.

The Court agrees with the Fifth Circuit's approach, and finds that the attribution rule best effectuates Congress' intent to limit diversity jurisdiction by enacting 28 U.S.C. § 1332(c)(1), which permits a corporation to have multiple places of citizenship.[2]

▮ Plaintiff also defends against the attribution rule by abjuring any intent to rely on a veil-piercing theory to impose liability on Fuller–U.S. This disavowal simply cannot be taken at face value. Plaintiff's oral argument before the Court was suffused with references to Fuller–U.S.'s power to control its subsidiary, and the results which plaintiff alleges flows therefrom. (*See, e.g.,* Tr. of H'rg. at 45 (control by Fuller–U.S. requires it to implead Fuller–Guatemala to relieve concerns under Fed.R.Civ.P. 19); Tr. at 61 (local interest in litigation exists "because H.B. Fuller [U.S.] is making the decisions here. The Board of Directors has issued directives to its subsidiaries concerning this controversy which they immediately abandoned after the limelight was turned off.

---

1. Thus, defendant's claim that the attribution rule has been recognized in this Circuit reflects at best a generous interpretation of the term "recognized."

2. The Court notes that there exists an anomaly in the Fifth Circuit's rule. Under it, diversity may exist for certain of a plaintiff's claims against a defendant, but not others *against the same defendant.* The Fifth Circuit implicitly recognized this in *Kuehne & Nagel v. Geosource, Inc.,* 874 F.2d at 291, when it noted that the plaintiff's direct claim against the parent corporation for the par-

ent's own conduct did not confer jurisdiction because complete diversity must exist with respect to all *claims.* While this conclusion is a logical one, this Court does not discern its underpinnings in the language of the statute as easily as does the Fifth Circuit. Because plaintiff's claim here is unambiguously an indirect one against Fuller–U.S. for its subsidiary's conduct, without any claims originating solely from the conduct of Fuller–U.S. (see below), it is unnecessary to consider here what limitations on the attribution rule may be appropriate.

But the fact remains that the company was controlling what happens in terms of distribution of the glue in Central America.") More importantly, plaintiff's entire theory of Fuller–U.S.'s liability is unquestionably that a parent corporation is responsible for the acts of its corporate grandchild. As stated in a recognized authority on corporate law, "the mere fact that one corporation holds all of the stock in another does not render it liable for the torts of the latter." 10 Julie Rozwadowski and James Perkowitz–Solheim, Fletcher Cyclopedia of the Law of Private Corporations § 4878, at 350 (Perm ed. 1993).

The Minnesota Supreme Court has recognized a limited exception to the immunity broadly granted to corporations for the acts of an affiliate. In *Victoria Elevator Co. of Minneapolis v. Meriden Grain Co., Inc.*, 283 N.W.2d 509 (Minn.1979), the Court described the factors to be considered in piercing the corporate veil: insufficient capitalization for purposes of the corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely a facade for individual dealings. *Id.* at 512.

Plaintiff has not specifically alleged the existence of any of these factors, but points generically to Fuller–U.S.'s alleged control of Fuller–Guatemala. This Court recognizes that, in analyzing these issues, its focus must lie "with reality and not form, with how the corporation operated and the individual defendant's relationship to that operation." *Victoria Elevator*, 283 N.W.2d at 512.[3] Assuming *arguendo* that as the holder of 80.4% of Fuller–Guatemala's stock, Fuller–U.S. is in a position to "call the shots" such fact alone does not satisfy the requirements for piercing the corporate veil.

Disregard of the corporate entity requires not only that a number of these factors be present, but also that there be an element of injustice or fundamental unfairness.

Where the above factors are present, to allow an individual to escape liability because he does his business under a corporate form is to allow him an advantage he does not deserve. Doing business in a corporate form is not wrong; it is, in fact, one purpose for incorporating. But where the formalities of corporate existence are disregarded by one seeking to use it, corporate existence cannot be allowed to shield the individual from liability for damages incurred by those dealing with the corporation.

*Victoria Elevator*, 283 N.W.2d at 512.

Plaintiff has never suggested that the glue at issue was manufactured by any entity other than Fuller–Guatemala; specifically, there are no genuine allegations that Fuller–U.S. actually manufactured and distributed the glue. Nor does Plaintiff allege that Fuller–U.S. has "milked" the assets of its subsidiary, or that Fuller–Guatemala is insolvent and thus unable to make any required recompense to plaintiff, or that plaintiff's decedent dealt with Fuller–Guatemala while thinking such dealings were ultimately secured by the full faith and credit of Fuller–U.S. *See, Minnesota Power v. Armco, Inc.*, 937 F.2d 1363, 1365 n. 3, 1368 (8th Cir.1991). Thus, there is no basis for finding an injustice. The only detriment to plaintiff is her inability to sue Fuller–U.S. for the conduct of a subsidiary corporation *which plaintiff may sue in her own country.* This is not a basis, however, for piercing the corporate veil for the fault for it does not lie with injustices effectuated by manipulation or disregard of the corporate form. Instead, it lies with the requirements imposed by the Minnesota law of corporations and the limits which Congress has prescribed for this Court's jurisdiction. These factors compel the conclusion that this case is in truth one brought by a Guatemalan citizen against another. This Court does not sit as a court of general jurisdiction, but one whose powers are sharply and zealously limited by statute. Whatever the merits of plaintiff's tort claims, they lie beyond this Court's power to resolve.

---

3. The approach outlined in *Victoria Elevator*, while it involved an individual shareholder, is equally applicable in the parent-subsidiary con-text. *Cooper v. Lakewood Engineering and Manufacturing Co.*, 45 F.3d 243, 246 (8th Cir.1995).

### D. Indispensability

In a separate and distinct argument, defendant further refines its jurisdictional challenge by arguing that as the manufacturer, Fuller–Guatemala is an indispensable party under Fed.R.Civ.P. 19(b). As such, it must be joined though its presence will formally deprive this court of diversity jurisdiction.

*Travelers Indemnity Co. v. Household Int'l, Inc.*, 775 F.Supp. 518 (D.Conn.1991) provides a helpful framework for analyzing the indispensability of a subsidiary. Travelers had a separately incorporated subsidiary named Travelers Illinois. Despite some confusing indications on the face of a Travelers-issued insurance policy, the court found that Travelers Illinois, not Travelers, had in fact issued the policy to Household. Consequently, based solely on the language of the policy, Travelers Illinois was "the real party in interest," under Fed.R.Civ.P. 17(a). 775 F.Supp. at 525. This conclusion was not altered by the fact that Travelers, as the parent corporation, had agreed to reinsure the subsidiary's liability under the policy. *Id.* While complicated, "Travelers' own internal corporate structure and billing arrangements do not redefine the contracting parties to the Policy." *Id.* The court also determined that the fact that Travelers–Illinois had instituted a declaratory judgment action in another federal district court against Household established that Travelers–Illinois was the real party in interest. *Id.*

The court then noted that "Rule 19 must always be consulted to determine if all the necessary parties have been joined." 775 F.Supp. at 526 (quoting 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1543 at 338). In doing so, the court noted that dismissal for failure to join indispensable nondiverse parties was not favored in the Second Circuit.

> Although the court has 'substantial discretion' ... the court bears in mind the Second Circuit's admonition that 'very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible.'

775 F.Supp. at 527 (citing, *Jaser v. New York Property Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2nd Cir.1987).

The factors relevant under Rule 19 include: (1) the extent to which a judgment rendered in the putatively indispensable party's absence might be prejudicial to it or to parties already joined; (2) the extent to which a judgment or other relief can be shaped to avoid any prejudice; (3) whether a judgment rendered without the party will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Central to the court's application of these principles was the observation that "a contracting party is the paradigm of an indispensable party." 775 F.Supp. at 527.

The court described the potential prejudice to the defendant as clear: "Certainly it is difficult to fathom a set of circumstances more prejudicial than a court of limited jurisdiction exercising jurisdiction over an action the court is circumscribed from hearing." *Id.* at 528. Another factor was the "public stake in settling disputes by wholes." *Travelers*, at 529 (quoting *Provident Tradesmens Bank & Trust v. Patterson*, 390 U.S. 102, 111, 88 S.Ct. 733, 739, 19 L.Ed.2d 936 (1968)). Requiring joinder of the subsidiary would advance this interest by joining all interested parties in one forum which could properly exercise jurisdiction. Finally, the court noted that plaintiff Travelers had an adequate alternative in that it could sue Household in a state court, which would obviously not be bound by 28 U.S.C. § 1332. *Id.* In view of these considerations, the court dismissed the action.

Another application of these principles is found in *Dou Yee Enterprises (S) PTE, Ltd. v. Advantek, Inc.*, 149 F.R.D. 185 (D.Minn. 1993). Defendant Advantek–U.S. manufactured semiconductor-related products. Advantek–U.S. entered into an agreement with the plaintiff whereby plaintiff became the exclusive sales agent in Singapore and elsewhere in the Pacific for Advantek–U.S.'s products. At that time, Advantek–U.S. created a subsidiary, Advantek–Singapore,

which became the "face" of Advantek with respect to dealings with the plaintiff. Plaintiff received products from, and was paid by, Advantek–Singapore.

Judge Doty's Rule 19 analysis was similar to that in *Travelers,* and it broadly considered the ramifications of not joining Advantek–Singapore. The court noted that the plaintiff had interacted only with Advantek–Singapore, making that entity "a primary participant in the alleged fraudulent acts underlying [plaintiff's] claims." 149 F.R.D. at 188. *See also Freeman v. Northwest Acceptance Corp.,* 754 F.2d at 559 (joinder necessary where subsidiary "becomes more than a key witness whose testimony would be of inestimable value[, and i]nstead it emerges as an active participant" in the alleged tort); *Lopez v. Shearson American Express, Inc.,* 684 F.Supp. 1144, 1147 (D.P.R.1988) ("[t]he law appears very clear that where the subsidiary is the primary participant in a dispute involving both the parent and the subsidiary, the subsidiary is an indispensable party"). *See also Gay v. AVCO Financial Services, Inc.,* 769 F.Supp. 51, 56 (D.P.R.1991):

> [T]he subsidiary is not a necessary party where the facts to be proven 'against' the subsidiary are not the ultimate facts needed to make the plaintiff's case, but are merely ancillary proof of the case which lies against the parent … [But where] the subsidiary is an active participant in the activity alleged as the basis for recovery, the subsidiary should be a party to the action.

*But see Pyramid,* 924 F.2d at 1121 (finding "primary participant" theory not grounded in Rule 19).

The court noted that a judgment against Advantek–U.S. might have a preclusive effect on Advantek–Singapore's ability to relitigate certain issues. 149 F.R.D. at 189. Moreover, even if not formally preclusive, an adverse ruling would have an adverse precedential effect on the subsidiary's position in future litigation. *Id.* (*citing, Acton Co., Inc. v. Bachman Foods, Inc.,* 668 F.2d 76, 78 (1st Cir.1982)). The court also found that despite their close alignment, there was no evidence that Advantek–U.S. could adequately protect Advantek–Singapore's interests given the lo-

cations of the parties and the facts of the case. 149 F.R.D. at 189.

As in *Travelers,* the *Advantek* court referred to Rule 19's goal of complete resolution of cases, and identified no way in which a judgment could be shaped or limited to avoid prejudice to the subsidiary. The court also concluded that Advantek–Singapore would likely be responsible for any judgment rendered against Advantek–U.S. Finally, the court found Singapore to be an adequate forum, and dismissed the action.

■ The above cases recite the principles governing this question, but none of them involve precisely the situation before this Court: is the manufacturer of a product indispensable in a product liability suit? Plaintiff argues that it is not, because it seeks redress only against Fuller–U.S. As stated earlier, there is no basis for this contention. Plaintiff correctly notes that "joint tortfeasors" are merely permissive, rather than indispensable parties. *Temple v. Synthes Corp.,* 498 U.S. 5, 7, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990) (per curiam). However, plaintiff does not cite to any cases in which joinder of an existing (as opposed to insolvent) manufacturer has been deemed permissive; typically it is a seller or similar intermediate party who is unsuccessfully claimed to be indispensable.

Consideration of the factors enunciated in Fed.R.Civ.P. 19(b) leads to the conclusion that Fuller–Guatemala, the undisputed manufacturer of a product bearing its own name, is an indispensable party in this product liability action. The exact effect which would be given a judgment adverse to Fuller–U.S. on Fuller–Guatemala's ability to litigate in Guatemala is unknown. However, plaintiff's complaint necessarily implicates Fuller–Guatemala's distinct and strong interest in legal determinations regarding the safety of its products. Nor is there any way, even under plaintiff's design conception theory, that a judgment against Fuller–U.S. will not be speaking directly and adversely to the quality of Fuller–Guatemala's products.

In analyzing the indispensability of Fuller–Guatemala, the Court considers the extent to which Fuller–U.S. will adequately represent

its subsidiary's interests. *Shermoen v. U.S.,* 982 F.2d 1312, 1318 (9th Cir.1992) *cert. denied,* 509 U.S. 903, 113 S.Ct. 2993, 125 L.Ed.2d 688 (1993) *reh'g denied,* 509 U.S. 940, 114 S.Ct. 13, 125 L.Ed.2d 765 (1993). The relevant factors include:

> [w]hether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would offer any necessary element to the proceedings that the present parties would neglect.

*Id.* at 1318 (internal quotations and citations omitted).

Despite the obvious community of interest the two Fuller entities have in a determination that the glue at issue here is, in one way or another "safe", those interests may well diverge at trial. For example, plaintiff's own "conceiving the design" theory places blame on Fuller–U.S. for the design of the glue. Given that Fuller–U.S. cannot be held liable for the acts of its subsidiary, it may attempt to show that, indeed, Fuller–Guatemala is responsible for the glue's design. (*See, e.g.,* Acevedo Aff. 3/18/96 Baker Aff.Exh. C at paras. 7–10 (former president of Fuller–Guatemala states that Fuller–Guatemala purchased rights to market adhesives and determined content of labeling.)) Conversely, Fuller–Guatemala, were it directly represented, may well wish to ascribe responsibility to its parent.

■ Plaintiff counters that Fuller–U.S. may alleviate any indispensability problem by requiring its subsidiary to consent to jurisdiction in this Court. Plaintiff points to *Associated Dry Goods Corp. v. Towers Financial Corp.,* 920 F.2d 1121 (2nd Cir.1990). In *Associated,* the Second Circuit rejected a Rule 19(b) challenge by a defendant lessee who argued that joinder of the non-diverse lessor was required in an action by the sublessee. The court held that the lessee could implead the lessor by asserting a compulsory counterclaim against it, thus invoking the district court's ancillary jurisdiction, which "equity and good conscience" required it to do. *Id.* at 1125–1126. Plaintiff asserts that

Fuller–U.S. should be required to do the same.

In 1990, Congress codified the federal common law of ancillary (now, "supplemental") jurisdiction. While it preserved pendent-party jurisdiction (joinder of parties not otherwise subject to the court's jurisdiction involving the same case or controversy), Congress limited supplemental jurisdiction as follows:

> [i]n any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) [of this section, conferring supplemental jurisdiction] over claims by plaintiffs against persons against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b) (emphasis added).

This is a diversity case, and this Court's jurisdiction rests, on 28 U.S.C. § 1332. Diversity jurisdiction over Fuller–Guatemala is not personal jurisdiction; Fuller–Guatemala may no more consent to waive the requirement of complete diversity than two Minnesota residents could. Because it is an alien corporation, diversity exists only if none of the parties on the opposing side are aliens. 28 U.S.C. § 1332(a)(2). As recited, plaintiff is a Guatemalan citizen. Thus, there can be no diversity jurisdiction even if, as plaintiff suggests, the Court compelled Fuller–U.S. to submit Fuller–Guatemala to the jurisdiction of this Court and defend against plaintiff's claims.

■ Plaintiff asserts, however, that if Fuller–U.S. asserts a claim against Fuller–Guatemala, then 28 U.S.C. § 1367(b) does not apply. Because the subsidiary would not then be adverse to plaintiff, she concludes, diversity will be preserved. The Court disagrees. "Diversity jurisdiction cannot be conferred upon the federal courts by the

parties' own determination of who are plaintiffs and who are defendants. It is our duty, as it is that of the lower federal courts, to look beyond the pleadings and arrange the parties according to their sides in the dispute. *Indianapolis v. Chase National Bank of City of New York*, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941) (citation omitted). This duty remains "a fundamental principle of federal jurisdiction." *Development Finance Corp. v. Alpha Housing and Health Care, Inc.*, 54 F.3d 156, 159 (3d Cir.1995).

■ The district court must "penetrate the nominal party alignment and . . . consider the parties' actual adversity of interest." *Development Finance Corp.*, 54 F.3d at 159. Adversity is determined by looking toward the "primary purpose" of, or "primary issue" embraced by the litigation. *See Indianapolis v. Chase National Bank*, 314 U.S. at 69, 62 S.Ct. at 17; *U.S. Fidelity and Guar. Co. v. A & S Manufacturing Co., Inc.*, 48 F.3d 131 (4th Cir.1995); *Development Finance Corp.*, 54 F.3d at 159–160; *U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir.1992); *Continental Airlines v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 n. 2 (9th Cir.1987); *see also Financial Guaranty Ins. Co. v. City of Fayetteville*, 749 F.Supp. 934 (W.D.Ark.1990) *aff'd*, 943 F.2d 925 (8th Cir.1991).

As stated before, this case is at its core one brought by plaintiff against Fuller–Guatemala for product-related liability. While Fuller–U.S.' putative third-party claim for contribution against its subsidiary may be genuine, it is merely "ancillary" to the underlying purpose of this suit. *See U.S.F. & G. v. A & S Mfg. Co.*, 48 F.3d at 134 (contribution disputes among insurers ancillary to primary issue of indemnity; resolution of that issue may render contribution claims moot); *U.S.F. & G v. Thomas Solvent Co.*, 955 F.2d at 1089 (same); *Continental Airlines v. Goodyear*, 819 F.2d at 1523 (defendant manufacturers' "internal dispute over contribution was ancillary to the essential controversy"). Thus, were Fuller–Guatemala impleaded by Fuller–U.S., this Court would be required to realign the parties consistent with their primary interests; as the primary interests of both Fuller entities are adverse to that of

plaintiff, Guatemalan citizens would be placed on both sides of the lawsuit, destroying diversity.

■ Finally, the parties have directed the court's attention to only one case involving forced impleader of a subsidiary, *D'Ambrosi v. Bayly, Martin & Fay Int'l, Inc.*, 1987 WL 7935 (S.D.N.Y.1987). That court did not find that option to be "realistic," and declined to create diversity by requiring it. The Court agrees that absent exceptional circumstances not present here, a parent should not be required to violate the corporate form by impleading a subsidiary.

Equity prohibits this action from proceeding where Fuller–Guatemala will be unable to defend its products or marketing methods, but may ultimately face liability as a result of legal determinations made in its absence. The Court cannot overlook the fact that any trial here will largely be a trial of the conduct of Fuller–Guatemala. It will be prejudiced without the opportunity to participate, and the Court cannot fashion any protection against this prejudice. Because Fuller–Guatemala is an indispensable party which may not be joined without depriving the Court of jurisdiction, the action must be dismissed.

**II. Forum Non Conveniens**

■ Even if the jurisdictional problems inherent in this case could be overcome, the case would remain, as defendant terms it, "immutably Guatemalan." Forum non conveniens is a discretionary doctrine by which federal district courts have inherent power to resist the imposition of jurisdiction even where authorized by statute if "the litigation can more appropriately be conducted in a foreign tribunal." *De Melo v. Lederle Laboratories*, 801 F.2d 1058, 1060 (8th Cir.1986) (*quoting Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947)). The Supreme Court and Eighth Circuit have clearly enunciated the rules applicable to the exercise of this discretionary power.

In *Piper Aircraft v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), a British-registered, American-manufactured aircraft crashed in Scotland. The aircraft was operated by a Scottish company at the time,

and was flying from Blackpool to Perth at the time. The accident was investigated by British authorities, who indicated that pilot error was the likely cause of the crash. Plaintiff, a secretary in the law firm which represented the decedents, filed a wrongful death action on behalf of the decedents in California state court, which was subsequently removed and transferred to Pennsylvania, where Piper had manufactured the plane. Defendants subsequently moved to dismiss under the forum non conveniens doctrine.

The Court began by reiterating the "private interest" and "public interest" factors which "guide trial court discretion":

*Private factors:*

(1) relative ease of access to sources of proof;

(2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;

(3) possibility of view of the premises, if view would be appropriate to the action; and;

(4) all other practical considerations that make trial of a case easy, expeditious and inexpensive;

*Public factors:*

(1) administrative difficulties flowing from court congestion;

(2) the local interest in having localized controversies decided at home;

(3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

(4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law;

(5) the unfairness of burdening citizens in an unrelated forum with jury duty..

*Piper,* 454 U.S. at 241, n. 6, 102 S.Ct. at 258, n. 6; *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

The Court reversed the Court of Appeals' holding that a showing that the law of the alternative forum was less favorable was sufficient to avoid dismissal. The Court flatly stated that "[t]he possibility of a change in the substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry." *Piper,* 454 U.S. at 247, 102 S.Ct. at 261. The Court placed considerable emphasis on the uniquely plaintiff-favorable product liability law which prevails in most U.S. jurisdictions. Without the ability to remit personal injury plaintiffs to the less favorable legal climates of their home countries, "[t]he flow of litigation into the United States would increase and further congest already crowded courts." *Id.* at 252, 102 S.Ct. at 264.

The Court began its own analysis by noting that while a plaintiff's choice of forum was normally entitled a strong favorable presumption, district courts are "fully justified" in according less weight to this choice when the plaintiff is foreign. *Id.* at 255–256, 102 S.Ct. at 266. This is because it is much less reasonable to assume that a foreign plaintiff has chosen an American forum for reasons of convenience. *Id.* Applying the private interest factors, the Court noted that while much evidence of the plane's manufacture was located in the U.S., a great deal of relevant evidence was in Great Britain as well. *Id.* at 258, 102 S.Ct. at 267. More importantly, defendants were unable to implead potential third-parties, crucial in light of the likely role that pilot or other non-manufacturing error played in the crash. The Court found that it would be burdensome and unfair to force the defendants to bring later actions for indemnity. *Id.* at 259, 102 S.Ct. at 268.

Finally, the Court determined that the public interest factors favored trial in Scotland: the district court had indicated that Scottish law would apply to one defendant, while American law would apply to another, while attesting its unfamiliarity with Scottish law. Moreover, Scotland, the Court concluded, "has a very strong interest in this litigation." *Id.* at 260, 102 S.Ct. at 268. The decedents were Scottish, and aside from the two American defendants, all potential parties were either Scottish or English. The Court found that Scotland's interest reflected the "local interest in having localized controversies decided at home." *Id.* The Court specifically rejected plaintiff's argument that "American citizens have an interest in ensuring that American manufacturers are de-

terred from producing defective products" overseas, and that this interest was advanced by subjecting them to the heightened American product liability law. *Id.* The Court termed any such deterrence as "incremental," and "simply not sufficient to justify the enormous commitment of judicial time and resources" which the case inevitably would require. *Id.* at 260–261, 102 S.Ct. at 268.

### A. Availability

■ Plaintiff first argues that Guatemala is neither available nor adequate as a forum, correctly noting that the doctrine presupposes these two considerations are met. *Reid–Walen v. Hansen,* 933 F.2d 1390, 1393 n. 2 (8th Cir.1991). Plaintiff argues that Guatemalan law forbids disturbing a plaintiff's forum choice. Consequently, Guatemalan courts will not recognize jurisdiction that has been "manipulated" by a forum non conveniens transfer. However, a quick and decisive solution to this potential problem was reached in *Delgado v. Shell Oil,* 890 F.Supp. 1324, 1375 (S.D.Tex.1995). After finding Guatemala and other fora to be adequate to merit forum non conveniens dismissal, the court directed that "in the event that the highest court of any foreign country finally affirms the dismissal for lack of jurisdiction" of any plaintiff's case, that plaintiff may return, and the court will resume jurisdiction. Defendant Fuller–U.S. has consented to jurisdiction in Guatemala. (*See* 3/18/96 Baker. Aff. para. 2.) Obviously, there would appear to be no jurisdictional problems respecting Fuller–Guatemala and plaintiff, both Guatemalan citizens.

■ Plaintiff also argues that, if defendant is correct and plaintiff's claims are time-barred under Guatemalan law, then Guatemala is not available as a forum. Forum non conveniens dismissals routinely require defendants to waive defenses which did not exist *at the time the plaintiff filed the action. See, e.g., De Melo v. Lederle Laboratories,* 801 F.2d 1058, 1059 (8th Cir.1986). *See also* 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure, § 1608 at 126 (analysis of availability of alternative forum under Fed.R.Civ.P. 19(b) considers whether alternative forum "fore-closed because the applicable limitations period has expired *since the institution of the federal action*") (emphasis added). That a case was inappropriately, though not illegitimately, brought in a federal court. (for the doctrine presupposes that jurisdiction exists in the forum) should not itself be a factor which, through the passage of time, bars a plaintiff from seeking relief elsewhere. But that has not happened here. If plaintiff's efforts to pursue litigation in Guatemala are ultimately thwarted by that country's one-year prescription period, it is so because plaintiff waited nearly three years to file suit.

Finally, while Guatemala may not have as well-developed a body of products liability law as does the United States, the Guatemalan Civil Code provides an all-purpose negligence statute which could be applied to this action. Plainly, Guatemala is "available" as a forum.

### B. Adequacy

■ Plaintiff devotes considerable argument to her contention that Guatemala is nevertheless inadequate as a forum. The test for adequacy is simply whether a party will have *some* remedy and will not be treated unfairly. *Reid–Walen,* 933 F.2d at 1393 n. 2. Much, if not all, of plaintiff's evidence centers on Guatemala's continuing failure to provide basic human rights. Plaintiff has submitted voluminous evidence on this point, which is concisely summed up in 7 Modern Legal Systems Cyclopedia § 1.3 (1988): "The historical picture consists, then, of a nation which has always paid some lip service to democratic forms and institutions, even while ruled by absolute dictators, but has no real respect for law and individual rights and due process which are necessary for any functioning democratic government."

Much of plaintiff's evidence gives the court pause. Were these proceedings related to a plea for asylum, or perhaps a civil claim brought by victims tortured by Guatemala's military, this would be a different case. But that case is not before the Court. Rather, the question is whether Guatemala's civil justice is capable of providing some redress for the death of plaintiff's decedent.

Plaintiff argues that Guatemala's negligence statute is inadequate, because it provides only medical expenses, wages and pecuniary support which the decedent might have contributed to the survivors, but not does provide relief for mental distress. (Urruela Aff. attached as Ex. 18 to Hendler Aff. para. 2; Bovino Aff. para. 21.) If this is so, then plaintiff should reconsider her decision to pursue relief under Minn.Stat. § 573.02, the wrongful death statute on which she relies. This statute only provides recovery for pecuniary losses. § 573.02(1).

Plaintiff points to situations in which Guatemalan judges have awarded damages for a child's wrongful death in the amount of only a few thousand dollars. While the parties disagree over the value of these awards, accounting for differences in rates of monetary exchange and other economic factors, this debate is not helpful.

Defendant notes the Eighth Circuit's refusal to reverse a forum non conveniens dismissal on identical grounds in *De Melo v. Lederle Laboratories, supra*. *De Melo* is particularly persuasive here, because the "equities" are so similar. De Melo was a Brazilian citizen who became blinded after taking a drug manufactured by Lederle's wholly-owned Brazilian subsidiary. The Eighth Circuit rejected de Melo's argument that she would be unable to pursue any recovery in Brazil, noting that contingent fee arrangements and free legal assistance were both possible avenues.[4] More importantly, Brazilian law permitted recovery for pecuniary losses; the unavailability of pain and suffering or punitive awards did not make potential recovery "so paltry as to render the available remedy illusory." *Id.* at 1061.

■ Plaintiff can get a recovery under Guatemalan law, though it may be a small one. As a legal matter, however, it would be comparable to that available under Minneso-

ta law, with the exception of a punitive award. Adequacy of the alternative forum does not require equivalence of result, but merely the existence of some meaningful remedy. A legal regime which permits recovery for pecuniary losses provides a meaningful remedy.

Defendant notes that many courts have authorized dismissal in favor of a Guatemalan forum on grounds of convenience, and plaintiff offers no authority to the contrary. *See, e.g., Delgado v. Shell Oil Co.*, 890 F.Supp. 1324 (S.D.Tex.1995), in which the court specifically credited the testimony of Ricardo Sagastume Vidaurre, defendant's expert on Guatemalan law in this case, and a former Chief Justice of the Guatemalan Supreme Court. 890 F.Supp. at 1361. The *Delgado* court did not spend much time specifically analyzing Guatemala's legal system (there were plaintiffs from at least eleven different countries), but it did conclude that Guatemala provided an adequate forum for personal injury product liability plaintiffs. As noted earlier, that court's dismissal also guarded against the possibility that jurisdiction might not be accepted by Guatemalan courts. 890 F.Supp. at 1357. *See also Acapolon Corp. v. Ralston Purina Co.*, 827 S.W.2d 189, 191–195 (Mo.1992) (en banc) (affirming dismissal in commercial dispute); *Banco Metropolitano v. Desarrollo de Autopistas*, 616 F.Supp. 301 (S.D.N.Y.1985) (banking dispute); *Bolanos v. Gulf Oil Corp.*, 502 F.Supp. 689 (W.D.Pa.1980) *aff'd*, 681 F.2d 804 (3rd Cir.1982) (Guatemalan prisoner's suit for malicious prosecution).

■ On the other hand, plaintiff—whose household includes neither running water nor electricity—appears to have few resources with which to litigate this case in Guatemala. Her home country does not permit contingency fee arrangements, though defendant represented at the hearing that free legal

---

4. The Eighth Circuit has considered the availability of contingent fee arrangements in deciding forum non conveniens dismissals, as have other courts. *See Reid–Walen*, 933 F.2d at 1399 (absence of contingency system will hamper plaintiff's ability to litigate, counseling against dismissal). It is questionable whether this factor should ever be given much weight, given that (1) America is one of very few countries, "civilized" or otherwise, to permit such arrangements, and (2) The Supreme Court explicitly recognized this uniqueness as an undesirably attractive feature to foreign personal injury plaintiffs. *Piper*, 454 U.S. at 252 n. 18, 102 S.Ct. at 264 n. 18. Consistent with the analysis prescribed by the Eighth Circuit, however, this Court will consider the absence of contingency fee arrangements in reaching its decision.

services are available for the indigent. (Bovino Aff. para. 16; Tr. of H'rg at 73.) Defendant also suggests that plaintiff's ability to persuade Guatemalan practitioners to submit materials on her behalf here demonstrates that competent representation can be found. Moreover, Guatemalan law may require plaintiff to pay attorney's fees to the defendant if she loses, further diminishing the likelihood that she will proceed. This is true, however, of many countries, and the Court is reluctant to find that a country which observes the same practice in this regard as Great Britain, from which our own legal traditions descended, does not comport with fundamental fairness.

Several federal courts have cautioned against the seductions of equating traditions with which American jurists are familiar with "fundamental fairness." *See, e.g., In re Union Carbide Corp. Gas Plant Disaster at Bhopal,* 634 F.Supp. 842, 867 (S.D.N.Y.1986) (dismissing action, and describing as "imperialism" the idea that an American court should "inflict[ ] its rules, its standards and values on a developing nation"). *See also Bolanos,* 502 F.Supp. at 693:

> We must be careful not to let our justifiable pride in the English common law system ... obscure the fact that much of Western Europe and other South American countries besides Guatemala are firmly grounded in the Civil Law tradition [which relies on written submission of evidence, restricts cross-examination, and does not provide a jury trial].

The above cases do not authorize an "anything goes" standard of adequacy. Rather, they reflect the respect which this Court owes to sovereign nations which as such are endowed, as surely as this Nation is, with the right to determine the standards of compensatory justice which comport with their particular economic and social requirements.

Plaintiff recites a litany of undesirable features of the Guatemalan legal system: the civil law tradition does not rely on reported cases as precedent; product liability under the negligence statute does not have a well-developed jurisprudence; Guatemalan courts are clogged with cases because they are inefficient and corrupt. The Court declines

plaintiff's invitation to categorically denigrate legal systems which do not rely on written precedents as American courts do. Moreover, even in America, theories of "strict" products liability have only reached maturity in the past thirty to forty years; Guatemala's relative infancy in this regard does not make it an inadequate forum. Further, plaintiff estimates that the case will take years for Guatemalan courts to resolve yet court congestion is a fact of life even in this country. Finally, there is no evidence that Fuller–U.S. or its subsidiary would use their considerable resources in an attempt to "buy" the Guatemalan courts.

This Court entertains no illusions that justice in Guatemala is the same as justice in America, but it recognizes that "sometimes different laws are neither better or worse in an objective way, just different." *Jepson v. General Casualty Co. of Wisconsin,* 513 N.W.2d 467, 473 (Minn.1994) (describing choice of law analysis). The Court concludes that Guatemala provides an adequate remedy for plaintiff's claims. Adequacy alone, however, does not determine the propriety of dismissal. The public and private interest factors must be considered.

### C. Private Factors

#### i. Relative Ease of Access to Sources of Proof

██ This factor weighs in favor of dismissal. Initially, there can be no question that defendant is financially more able to gather and process evidence, but plaintiff glides over the fact that this evidence must of necessity be located in Guatemala. Defendant presents uncontradicted evidence that manufacturing, labeling for sale, marketing, and other relevant conduct occurred solely in Guatemala. (*See generally,* Acevedo Aff.) It is similarly uncontradicted that plaintiff's decedent came into possession of the Guatemalan-manufactured glue, inhaled it, and died in Guatemala, his home. Plaintiff nevertheless argues that Guatemala is not the center of events.

It is true that most, if not all, the evidence relating to Fuller–U.S.' decision making will be found here. However, this evidence is

likely more centralized and easily accessible than the investigation in Guatemala of the circumstances by which decedent came to inhale glue which will inevitably ensue as Fuller–U.S. prepares its defense. So too with respect to manufacturing and labeling and distribution practices which—regardless of their coordination by Fuller–U.S.—have an undeniably Guatemalan character. In sum, Guatemala is the true focus of this litigation. *De Melo,* 801 F.2d at 1062 (dismissal appropriate where Brazil was location of all relevant evidence of product manufacture, distribution, and marketing, as well as all evidence relating to plaintiff's illness); *Fraizer v. St. Jude Medical, Inc.,* 609 F.Supp. 1129, 1131 (D.Minn.1985) (even though allegedly defective medical device manufactured was Minnesota, all evidence of implantation procedure located in Denmark, favoring dismissal).

### ii. Compulsory Process to Secure Attendance of Witnesses

■ This factor also weighs in favor of dismissal. Although employees of Fuller–Guatemala likely lie beyond this Court's power to compel, the Court assumes that Fuller–U.S. would have little difficulty in summoning its wholly-owned subsidiary to its aid as a witness. Despite this, defendant points out that there are several other manufacturers whose adhesives are marketed in Guatemala and abused by its children. (Acevedo Aff. para. 11.) While plaintiff's theory is obviously that it was Fuller–Guatemala's glue that her decedent inhaled, the nature of the decedent's use suggests, at a minimum, that defendant is likely to raise substantial issues of product identification. Unable to implead other manufacturers as codefendants works a substantial prejudice to defendant, a prejudice which the Supreme Court held favored dismissal in *Piper Aircraft.* 454 U.S. at 259, 102 S.Ct. at 267–268; *Fraizer,* 609 F.Supp. at 1131.

Plaintiff claims that there will be few witnesses whose physical presence will be necessary, in view of advancing technology. At this time, identification of witnesses has not yet been made. However, it is overwhelmingly probable that of the witnesses now unknown to the parties, many would turn out to be Guatemalan residents. Because plaintiff does not identify a direct duty owed her by Fuller–U.S., this case is unlike *Reid–Walen v. Hansen,* 933 F.2d at 1398, where the Eighth Circuit reversed dismissal and noted that defendant was not prejudiced by the inability to implead because the plaintiff's allegations embraced a duty which the defendant owed *directly to the plaintiff.* *Reid–Walen* involved a boating accident in which the owners of a Jamaican resort were sued for the negligence of their boat operator. Although the accident was clearly the operator's fault, the cause of action stemmed from the owners' non-delegable duty to provide a safe environment. No such duty exists here.

### iii. Practical Considerations

■ Plaintiff correctly observes that trial of this case anywhere else is a formidable hurdle, and urges that the real question is "whether it would be tried at all." *Irish Nat'l. Ins. Co. v. Aer Lingus Teoranta,* 739 F.2d 90, 91 (2d Cir.1984). The Court recognizes that the probability exists this case will not be tried in Guatemala upon dismissal. However, the facts of this case are so overwhelmingly centered in Guatemala that such a probability cannot be given dispositive weight.

### D. Public Factors

■ With regard to the public factors, these weigh in favor of dismissal. Guatemala's interest in setting the standards by which products manufactured there will be judged permeates this entire case. *Piper,* 454 U.S. at 260, 102 S.Ct. at 268; *De Melo,* 801 F.2d at 1064 (describing Brazil's interest as "paramount"); *Fraizer,* 609 F.Supp. at 1131–1132 (Denmark has strong interest in setting standards for products marketed there, though manufactured elsewhere). Perhaps Guatemala believes that it is sound policy to require manufacturers of industrial products to pay for the consequences of their misuse by children. Perhaps Guatemala prefers economic growth to tort compensation of individuals. The Court does not know, and will not presume to decide for Guatemala where its interests lie. That choice is for Guatemalans.

Minnesota has a correspondingly limited interest in this dispute. Even if the controversy here was limited to the conduct of Fuller–U.S., it is clear under the Supreme Court's teachings that Minnesota has only an "incremental" interest in setting the standards of its conduct in other countries. *Piper*, at 260–261, 102 S.Ct. at 268. This small interest is diminished further still by the fact that the conduct challenged here is in truth that of a Guatemalan corporation, rather than an American one. Plaintiff's continuing reliance on *Reid–Walen* is again misplaced, because the plaintiff in that case was an American citizen, a fact which entitled the plaintiff to a strong presumption of deference in her forum choice. By contrast, plaintiff is a foreign citizen; indeed, as discussed throughout, there are serious doubts whether *any* real party in interest to this litigation is not a foreign citizen. Moreover, *Reid–Walen* was a simple boating accident, "not a newsworthy event or of broad public significance." 933 F.2d at 1400. These distinctions provide the proper context for evaluating the Eighth Circuit's observation that the defendant's home forum "always has a strong interest" in providing redress for injuries caused by its citizens. *Id.*

As stated, this case is "immutably Guatemalan." As such, even if this Court had jurisdiction to entertain plaintiff's claims— and it does not—it would exercise its discretion under the doctrine of forum non conveniens and order dismissal of the case, with the limited conditions described herein.

## CONCLUSION

This Court does not have subject matter jurisdiction over this case based upon diversity because Fuller–US cannot be sued for the acts of its subsidiary, and because as manufacturer of the glue, Fuller–Guatemala is an indispensable party. As a result, Guatemalan citizens are on both sides of the suit. Nonetheless, even if the Court had subject matter jurisdiction over this suit, the Court would exercise its discretion and dismiss the case under the doctrine of forum non conveniens as it is more appropriate that this case be tried in Guatemala.

## ORDER

Based on all the files, records and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motion to dismiss is hereby GRANTED on the basis that this Court does not have diversity jurisdiction under 28 U.S.C. § 1332(a)(2) and based on the doctrine of *forum non conveniens.* Plaintiff's complaint is dismissed without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.